Taft, J.
 

 This appeal is from a decision of the Board of Tax Appeals denying the application of appellant for exemption from taxation of a certain parcel of real estate.
 

 
 *71
 
 The only question presented by the record is whether that decision is unreasonable or unlawful. Section 5611-2, General Code.
 

 In the brief of the Attorney General it is argued that “irrespective of whether the building in question is occupied for private residence purposes there is nevertheless no use exclusively for public worship.” .However, we have examined the record and believe 'that the Board of Tax Appeals’ finding that the first •floor was used exclusively for public worship was .fully justified by the evidence presented.
 

 The reasons for the decision appealed from are set 'forth in the entry made by the board as follows:
 

 ‘ ‘ The evidence shows that there is a two-story brick building located on the real estate here in question and that the first floor thereof is used exclusively for public worship. The evidence further shows that a private family lives in the rooms on the second floor; that the family consists of a man, his wife and child; that the man works elsewhere in the daytime and acts as caretaker of the building at night; that his wife fakes care of the cleaning of the building in the daytime; that the applicant pays the man and wife $30 per month in addition to supplying living quarters for the family.
 

 ‘ ‘ This board is of the view that the use of a portion of this building for a- private residence quarters is not an exclusive use for public worship.”
 

 Although the building involved was described by the Board of Tax Appeals as a two-story building, the record indicates that it was, in reality, what is sometimes called a 1%-story building.
 

 The seating capacity on the first floor was approximately 120. In the upper portion, top one-half or second floor of the building, were three rooms. These
 
 *72
 
 were used by tbe caretaker and bis wife and child, although one was used occasionally for services. Of the other two, one was a sleeping room and the other was “what you might call a kitchen.”
 

 So far as pertinent in this case, Section 2 of Article NTT of the Constitution provides that “general laws-may be passed to exempt
 
 *
 
 * * houses used exclusively for public worship,” and Section 5349, General Code, provides that “houses used exclusively for public worship, the books and furniture therein and the-ground attached to such buildings necessary for the proper occupancy, use and enjoyment thereof and not leased or otherwise used with a view to profit * * * shall be exempt from taxation.” ■
 

 The Attorney General argues, and the Board of Tax Appeals has apparently held, that the words, “used exclusively for public worship,” should be interpreted literally to exclude any other use whatsoever.
 

 Such a literal construction could prevent any exemption being given under these words of the Constitution. It would not be difficult to show some slight use-of any church building for a purpose other than public worship. It would probably be impossible to prevent such use. The building must be open to all members of the public if it is to qualify as one used for
 
 “public
 
 worship.” If someone comes into the building and misuses it, is the exemption to- be denied? Such a literal construction would clearly not be a reasonable construction. The people certainly intended that the words they used in the Constitution should be given a reasonable meaning.
 

 There are many activities conducted in church buildings which do not constitute public worship but which are designed to encourage people to use the church for public worship. The use of. a room in the church to
 
 *73
 
 entertain young children while their parents attend chnrch services is not a use for public worship. The use of the church building for meetings of boy scouts is not a use for public worship. The use of part of the building for the preparation of food for a church supper and the eating of such food are not uses for public worship. Certainly it was not the intention of the people that their words, "used exclusively for public worship,” should be so literally construed that any such uses would prevent tax exemption of a church building.
 

 Although constitutional provisions for exemption from taxation should be given a strict construction, that construction should be reasonable and one which will not defeat the intention which the people expressed by the words which they used.
 

 This court and the General Assembly have recognized the interest in encouraging public worship which the people indicated in these constitutional provisions. That interest is further indicated by Section 7 of Article I of the Constitution.
 

 Since a building was convenient and often essential for that purpose, the General Assembly was authorized by the people to exempt from taxation "houses used exclusively for public worship.” Pursuant to “this provision, statutes were enacted by the General Assembly which exempt from taxation not only the "houses” but also "the ground attached to such buildings necessary for the proper occupancy, use and enjoyment thereof.”
 

 The question was raised in
 
 Gerke, Treas.,
 
 v.
 
 Purcell,
 
 25 Ohio St., 229, as to whether the provision authorizing the General Assembly to exempt “houses used ■exclusively for public worship” authorized these further exemptions of land used with such houses of wor
 
 *74
 
 ship. The ninth paragraph of the syllabus reads:
 

 “The express authority given in the Constitution to-exempt from taxation ‘houses used exclusively for public worship, ’ carries with it, impliedly, authority to-exempt such grounds as may be reasonably necessary for their use; but such grounds must subserve the-same exclusive use to which the buildings are required; to be devoted.” .
 

 In the court’s opinion by White, J., it is said on page-24<3:
 

 “The plaintiff in error claims, in effect, that only so much ground can be exempt as is essential to support the church edifice, and to afford facilities for-light and air, and ingress and egress to and from the-building.
 

 “We do not think the Constitution requires a construction so rigid; nor, when fairly construed, do we-see in the provision of the statute an unwarranted assumption of power.
 

 “The express authority given in the Constitution, to exempt buildings of the description named, carries with it, impliedly, authority to exempt such grounds •as may be reasonably necessary for their use. The-ground in such case becomes annexed to the building as an incident; but the ground so annexed must sub-serve the same exclusive use to which the building is ■ required to be devoted.
 

 “It is not required-that the ground should be indispensable to the use of the building as a place of worship. If the ground is no more than is reasonably • appropriate to the purpose, and is used for no other,., it comes fairly within the limits prescribed by the Constitution and the statute.”
 

 Some care of a building is necessary in order that it* may be used. Provision for such care may require that
 
 *75
 
 the caretaker reside on the premises. The fact that .he does, that his wife also helps in the work, and that their child lives with them should clearly not detract .from the fact that the building is used exclusively for public worship. Such a use is not only definitely incidental to the primary use of the building for public •worship but also is merely an element in making that mse possible.
 

 The cases relied upon by the Board of Tax Appeals .and the Attorney General, as supporting the conclu-sion that use of this building was not “exclusively for public worship,” are not all cases involving claims for ■exemption under the statutory and constitutional provisions involved in this case. However, an analysis -of those cases denying tax exemption discloses that they fall into the following four general classifications, .each identified by a significant reason:
 

 1. Those where claim was made for exemption as a ’“public college or academy” or as a public charity ■ and the institution was found to be one not open to the public.
 
 Bloch
 
 v.
 
 Board of Tax Appeals,
 
 144 Ohio St., 414, 59 N. E. (2d), 145;
 
 American Committee of Rabbinical College of Telshe, Inc.,
 
 v.
 
 Board of Tax Appeals,
 
 148 Ohio St., 654, 76 N. E. (2d), 719;
 
 East Cleveland Post, V. F. W.
 
 v.
 
 Board of Tax Appeals,
 
 139 Ohio St., 554, 41 N. E. (2d), 242.
 

 The evidence in the instant case shows that anyone could attend services or classes, whether or not a member of The Bond Hill-Roselawn Hebrew School.
 

 2. Those where the property was not yet or actually ■used as required for exemption.
 
 Jones, Treas.,
 
 v.
 
 Conn et al., Trustees,
 
 116 Ohio St., 1, 155 N. E., 791;
 
 Wehrle Foundation
 
 v.
 
 Evatt, Tax Commr.,
 
 141 Ohio St., 467, 49 N. E. (2d), 52;
 
 Ursuline Academy of Cleveland
 
 v.
 
 Board of Tax Appeals,
 
 141 Ohio St., 563, 49 N.
 
 *76
 
 E. (2d), 674;
 
 Pfeiffer et al., Trustees,
 
 v.
 
 Jenkins et al., Board of Tax Appeals,
 
 141 Ohio St., 66, 46 N. E. (2d), 767.
 

 3. Those involving a substantial use for a purpose having a clear commercial aspect.
 
 East Cleveland Post
 
 v.
 
 Board of Tax Appeals, supra; Cullitan, Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 16 N. E. (2d), 205;
 
 In re Complaint of Taxpayers,
 
 138 Ohio St., 287, 34 N. E. (2d), 748;
 
 Columbus Metropolitan Housing Authority
 
 v.
 
 Thatcher, Aud.,
 
 140 Ohio St., 38, 42 N. E. (2d), 437;
 
 Incorporated Trustees of Gospel Worker Society
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 185, 42 N. E. (2d), 900;
 
 Youngstown Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 268, 55 N. E (2d), 122;
 
 Crown Hill Cemetery Assn.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 399, 55 N. E. (2d), 660;
 
 Hospital Service Assn. of Toledo
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 179, 57 N. E. (2d), 928;
 
 Welfare Federation of Cleveland
 
 v.
 
 Glander, Tax Commr.,
 
 146 Ohio St., 146, 64 N. E. (2d), 813;
 
 Battelle Memorial Institute
 
 v.
 
 Dunn, Aud.,
 
 148 Ohio St., 53, 73 N. E. (2d), 88.
 

 4. Those which may be referred to as “parsonage” cases.
 
 Gerke
 
 v.
 
 Purcell, supra; Watterson
 
 v.
 
 Halliday, Aud.,
 
 77 Ohio St., 150, 82 N. E., 962;
 
 Society of the Precious Blood
 
 v.
 
 Board of Tax Appeals,
 
 149 Ohio St., 62, 77 N. E. (2d), 459;
 
 Mussio
 
 v.
 
 Glander, Tax Commr.,
 
 149 Ohio St., 423, 79 N. E. (2d), 233.
 

 Cases 'of the first two classifications obviously are of little help in considering the question involved in this case. This case lacks the tinge of commercialism-which resulted in loss of tax exemption in cases of the third classification.
 

 The distinction between a case such as the instant one and the ‘‘ parsonage ’ ’ cases was brought out very
 
 *77
 
 well in the court’s opinion by Price, J., in
 
 Watterson
 
 v.
 
 Halliday, supra,
 
 172, where it is said:
 

 ‘ ‘ But it is clear that such houses are primarily places of residence, as the church building is primarily a place of public worship; and it does not alter the law, as we think, that the increasing demands upon the time and devotion of the priest make it necessary or convenient to perform many of his duties at his place of residence. ’ ’
 

 With regard to a parish house or parsonage, it is clear that the primary use of the premises is for residence and any use for public worship is merely incidental. In the instant case, the primary use of the building is for public worship. It is not reasonable to say that, because the caretaker and his wife and child lived in a relatively small portion, the building was not a house which was used exclusively for public worship. Cf.
 
 Cullen
 
 v.
 
 Schmit,
 
 139 Ohio St., 194, 39 N. E. (2d), 146. This is especially so where, as here, the living quarters are furnished those who are to keep the building in the physical condition it must be in so it may be used for public worship.
 

 Particular reliance is placed by the Attorney General, in his argument, on the case of
 
 Mussio
 
 v.
 
 Glander, supra.
 
 There a three-story building was involved. On the second floor were eight office rooms together with three or more other rooms used for living quarters for the priest of the chapel and another room used occasionally as living quarters for a visiting priest who assisted in chapel services. The chapel was located on the first floor. The third floor was occupied as a place of residence by six sisters who were engaged in remaking and repairing clothing donated for the poor, or in outside activities in ministering to the sick and needy poor.
 

 
 *78
 
 It would appear clear that the principal and primary use of the building in the
 
 Mussio case
 
 was not for public worship. That case would appear to be clearly distinguishable from this case.
 

 Our conclusion is that the building in the instant case is entitled to tax exemption, and that the holding of the Board of Tax Appeals that the building was not used “exclusively for public worship,” within the meaning of the Constitution and the statute, is unreasonable.
 

 The decision of the Board of Tax Appeals being unreasonable is reversed.
 

 Decision reversed.
 

 Matthias, Hart, Stewart and Turner, JJ., concur.