Taft, J.
As the Board of Tax Appeals said, “the issue in this case is purely one of law and may be stated as follows’:
“Is Delaware County land purchased by the proceeds of mortgage revenue bonds, which land is owned by the city of Columbus (Franklin County) exempt from taxation when the land is to be used by the city of Columbus to contain and hold a reservoir of water, which water is sold and distributed by the city of Columbus to its residents and to the residents of its suburbs?”
Columbus argues against this statement of the question because it refers to the land as “purchased by the proceeds of mortgage revenue bonds,” and contends that the entire Hoover Dam project is being financed by general obligation bonds. In support of this contention, reference is made to certain ordinances of Columbus passed to provide funds for the project. However, those ordinances do not appear in the record, this court will not take judicial notice of them (Schulte v. Johnson, 106 Ohio St., 359, 140 N. E., 116, and Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Moore, 33 Ohio St., 384, 31 Am, Rep., 543), *607 and there is sufficient evidence in the record to support the apparent conclusion of the Board of Tax Appeals that this land was “purchased by the proceeds of mortgage revenue bonds.”
In support of its claim for exemption of these lands from taxation, Columbus relies upon Sections 5709.11 and 5709.08, Revised Code. Section 5709.11, Revised Code (formerly Section 5357, General Code), reads:
“Works, machinery, pipelines and fixtures belonging to a municipal corporation and used exclusively for conveying water to it, or for heating or lighting it, shall be exempt from taxation.”
It is contended by Columbus that a reservoir and the real estate thereunder are included within the meaning of the word “works” as used in that statute. In our opinion, it would probably be reasonable to determine either that that word does include such a reservoir and real estate or that it does not. However, in other instances, the General Assembly has apparently regarded that word as not including such reservoir and real estate. See for example Section 719.01, Revised Code, providing for appropriation of property “for providing a water supply * * * by the construction of wells, # * # dams, reservoirs, reservoir sites, and waterworks, and for the protection thereof,” Section 743.01, Revised Code, authorizing “the legislative authority of a municipal corporation” to “take possession of any land obtained for the construction or extension of waterworks, reservoirs,” and Section 743.05, Revised Code, providing that ‘ ‘ after payment of the expenses of conducting and managing the waterworks, any surplus * * * may be applied to the repairs, enlargement, or extension of the works or of the reservoirs.”
Also, Section 5709.11, Revised Code, relates to the exemption of property from taxation and should therefore be given a “strict” though reasonable construction. In re Bond Hill Roselawn Hebrew School, 151 Ohio St., 70, 84 N. E. (2d), 270. Such construction would result in not including a reservoir and the real estate thereunder within the meaning of the word, “works,” as used in this statute.
Columbus contends that the decision of this court in City of Toledo v. Hosler, Treas., 54 Ohio St., 418, 43 N. E., 583, re *608 quires a construction of that word which would include within its meaning a reservoir and the real estate thereunder. An examination of the report of that case indicates that it was apparently held that not only “gas wells” but also “gas leases * * * to the extent of 520 acres,” upon which gas wells, fixtures, and pumping stations were located and “used * * * in extricating and conveying the gas” therefrom, were exempt from taxation. It is probably fair to say that such a holding would amount to a holding that the word “works” could have a meaning broad enough to include the land upon which gas wells, fixtures, and pumping stations are located. It does not appear however from the report of the case that any contention was made that the word “works” should be construed so as not to include real estate or that that question was considered or pqssed upon by this court. A reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a question not passed upon or raised at the time of the adjudication. State, ex rel. Gordon, City Atty., v. Rhodes, Mayor, 158 Ohio St., 129, 107 N. E. (2d), 206; B. F. Goodrich Co. v. Peck, Tax Commr., 161 Ohio St., 202, 118 N. E. (2d), 525.
Section 5709.08, Revised Code, reads in part:
“Real or personal property belonging to the state or the United States used exclusively for a public purpose, and public property used exclusively for a public purpose, shall be exempt from taxation. Real and personal property, when devoted to public use and not held for pecuniary profit, owned by an adjoining state * * *, shall be exempt from taxation * * *.” (Emphasis added.)
Since this property is owned by a municipal corporation, it is public property. City of Toledo v. Jenkins et al., Board of Tax Appeals, 143 Ohio St., 141, 54 N. E. (2d), 656. However, Delaware apparently contends that it is not used “exclusively for a public purpose.”
We believe the record fully justifies the conclusion, which its decision indicates that the board necessarily reached, that the land for which tax exemption is sought has been prepared for use and is to be used exclusively for the purpose of containing and holding a reservoir of water to be sold and distributed by Columbus to its residents and to residents of its sub *609 urbs, which would obviously be a use in furnishing a public utility service to the public at large. The question then is whether that purpose is a “public purpose” within the meaning of Section 5709.08, Eevised Code.
With respect to questions of liability of a municipality for its torts, that purpose has been held to be a proprietary purpose as distinguished from a governmental purpose. City of Barberton v. Miksch, 128 Ohio St., 169, 190 N. E., 387. See State, ex rel. Mt. Sinai Hospital of Cleveland, v. Hickey, Dir., 137 Ohio St., 474, 30 N. E. (2d), 802. However, until the decision of this court in Zangerle, Aud., v. City of Cleveland, 145 Ohio St., 347, 61 N. E. (2d), 720, this court had consistently and repeatedly held over a period of almost 100 years that the use of property in furnishing a. public utility service is still a use thereof for a “public purpose.”
Thus, in Toledo v. Hosler, supra (54 Ohio St., 418), a city sought a perpetual injunction restraining the treasurer of a county other than that in which the city was located from collecting a tax upon so much of its pipelines, gas wells, telephone line and fixtures as were in such other county. In its finding of facts, the Circuit Court found that the property for which tax exemption was sought was “exclusively used * * * to produce, convey and furnish natural gas to said city, for public and private use and consumption, and said city * * * sold a part of the same to the private residences of said city for private use in said city, at a fixed and established rate, made so by the ordinance of said city, and from which rate said city derive a revenue, and this was partly the purpose by and for which said city became the owner of said system of machinery, gas wells, etc., * * * and partly the purpose of said city in operating said system of machinery, gas wells, etc.” This court reversed the judgment of the Circuit Court, which had dismissed plaintiff’s petition, and rendered judgment for the city.
The syllabus reads:
“Gas wells, pipelines, pumping stations and machinery owned by a municipal corporation and used by it for the conveyance of gas to be consumed by it and by its citizens generally, are used exclusively for a public purpose and are exempt from taxation.”
*610 In the opinion “by the court” it is stated:
1 “The constitutional restriction upon the power to exempt property from taxation requires that the exempted property must be used exclusively for a public purpose. That the property in question is so used, is determined in State, ex rel., v. Toledo, 48 Ohio St., 112. In that case the validity of the act under whose favor the city of Toledo acquired this property was challenged upon the ground that it was an attempt to authorize the city to tax its citizens for a purpose which, in part at least, was not public. The facts found in this case show that the property is used for the purposes contemplated in the act whose validity was there sustained.”
In State, ex rel., v. City of Toledo, 48 Ohio St., 112, 26 N. E., 1061, 11 L. R. A., 729, the syllabus reads in part:
“The supplying of municipal corporations and their citizens with natural gas, is a public use or purpose, for which the taxing power may be constitutionally exercised. ’ ’
In the opinion by Dickman, J., it is said at page 134:
“In holding that there can be no lawful tax which is not imposed for a public purpose, the line of demarcation is by no means clear and distinct, and well defined, between what is for public, and what for private purposes. * * * There are, however, certain objects, the promotion of which, by reason of their being treated as of general necessity, has been decided to be a public use or purpose. * * * The objects and business of aqueduct and waterworks companies, for the supply of cities and their inhabitants with water, are a public use.”
At page 136 it is said:
“Water, light and heat, are objects of prime necessity. Their use is general and universal. It is now well settled, that the Legislature in the exercise of its constitutional power may authorize cities to appropriate real estate for waterworks; and levy and assess upon the general tax list an assessment on all taxable real and personal property in the corporation, for the payment of the cost and repair of such waterworks * * *. The benefits and conveniences may not be embraced by all, but they are notwithstanding designed for the general advantage, and subserve what is recognized as a public purpose.”
*611 In Toledo v. Jenkins, supra (143 Ohio St., 141), the syllabus reads in part:
“4. In general the real property of a municipal corporation, constituting part of its wholly owned and operated public airport, is public property within the meaning of the Constitution and statute.
“5. All the real estate necessary and incidental to the operation of such an airport and used therein is devoted to a public use.
“6. The fact that revenue is incidentally derived from public property does not in and of itself alter the public character of the use.”
In the course of the opinion by Williams, J., it is stated:
“* * * The Toledo Municipal Airport was and is a complete public utility unit.
( ( # # #
“That the use of essential public utility property in the operation of the utility is a public use can not be gainsaid. * * * Public utilities are created to render service to the public and for the service a charge is made. Any incidental use allied to the main public purpose is likewise public. * * * the mere fact that revenue is received for the space so rented does not change the public aspect, so long as the purpose of the utility is sub-served and the objective is not primarily to obtain revenue. * * * So all the real estate necessary and incidental to the operation of a municipally owned and controlled airport unit would in its operation be concerned with a public use.”
See also Cincinnati, Wilmington & Zanesville Rd. Co. v. Commrs. of Clinton County (1852), 1 Ohio St., 77; Giesy v. Cincinnati, Wilmington & Zanesville Rd. Co., 4 Ohio St., 308; State, ex rel. McGhee, Atty. Genl., v. Black Diamond Co., 97 Ohio St., 24, 119 N. E., 195, L. R. A. 1918E, 352; County of Anoka v. City of St. Paul, 194 Minn., 554, 261 N. W., 588, 99 A. L. R., 1137; and 51 American Jurisprudence, 554, Section 563.
The General Assembly certainly did not state that the words “public purpose,” as used in Section 5709.08, Revised Code, should not include a public purpose of a proprietary nature. Furthermore, as pointed out in a dissenting opinion in *612 City of Cleveland v. Board of Tax Appeals, 153 Ohio St., 97, 125, 91 N. E. (2d), 480, 16 A. L. R. (2d), 1354, the second sentence of that statute rather clearly indicates that the General Assembly in the first sentence thereof did not intend to limit the words, “public purpose” to a purpose of a governmental nature. Our conclusion is that a public purpose of a proprietary nature is still a public purpose within the meaning of those words as used in Section 5709.08, Revised Code.
There is nothing in the syllabus in Zangerle v. Cleveland, supra (145 Ohio St., 347), which expressly states the proposition that a public purpose of a proprietary nature is not a public purpose within the meaning of those words as used in Section 2 of Article XII of the Constitution or in Section 5151, General Code (now Section 5709.08, Revised Code). However, that proposition might be inferred from the words used in paragraphs four, five and seven of the syllabus, and a reading of the majority opinion indicates that that proposition was probably the basis for the decision rendered. Also, there is nothing in the syllabus in Cleveland v. Board of Tax Appeals, supra (153 Ohio St., 97), Avhich expressly states such a proposition, although such a proposition might be inferred from the words used in paragraphs five and six of the syllabus, and a reading of the majority opinion (especially at pages 107, 111, 112) indicates that the decision was rested in substantial part on that proposition. The facts upon which this court relied in Zangerle v. Cleveland, supra (145 Ohio St., 347), were apparently quite different from those involved in the instant case in that the city was there regarded as operating its railway system “primarily for profit” (page 358). As stated in one of the dissenting opinions in Cleveland v. Board of Tax Appeals, supra (153 Ohio St., 97), at page 126, “if an ‘exclusive’ use for public purposes were necessary for tax exemption, I would be inclined to agree that the stadium was not exempted.” Since that decision, the word “exclusively” was inserted by amendment in Section 5151, General Code (now Section 5709.08, Revised Code). 124 Ohio Laws, 379, effective September 7,1951. Therefore, although we have concluded in the instant case that a public purpose of a proprietary nature is still a public purpose within the meaning of those words as used in Section 5709.08, *613 Revised Code, such conclusion is not necessarily inconsistent with the decision rendered in Zangerle v. Cleveland, supra (145 Ohio St., 347), nor would it, if followed, require us to render a different decision from that rendered in Cleveland v. Board of Tax Appeals, supra (153 Ohio St., 97), if the problem considered in that case were now presented to us for decision again.
It may be argued that, since Section 5709.11, Revised Code, deals specifically with waterworks, indicates definitely that the General Assembly considered municipal utilities, and does not mention reservoirs or the real estate thereunder, we should imply a legislative intent not to include such reservoirs and real estate within the general words “public property used exclusively for a public purpose” found in Section 5709.08, Revised Code. We believe that a brief consideration of the history of these exemption statutes will disclose that such a legislative intent should not be implied.
From 1864 (61 Ohio Laws, 42) until 1923 (110 Ohio Laws, 77, 78), there was in our exemption statutes language somewhat similar to that now found in Section 5709.11, Revised Code. Apparently, what the General Assembly did until 1923 was to specify with considerable particularity the kinds of property that it intended to be exempted from taxation. The general words of exemption, with respect to “public property used * * * for a public purpose,” now found in Section 5709.08, Revised Code, were first added to the exemption statutes in 1923. It is apparent therefore that those general words must have been intended to add something to the exemptions which had previously been specified, and have been intended to have as general an application as their generality would apparently justify.
There is much force to the arguments advanced by Delaware as to why a rural county and its taxpayers should not in effect be required to subsidize the water users in an adjoining metropolitan county. However, this is a consequence which necessarily follows the express provision for tax exemption made in broad and general words by the General Assembly in Section 5709.08, Revised Code. The words of Section 2 of Article XII of the Constitution expressly recognize the power of the General Assembly to make that statutory provision. This *614 court has authority to determine whether, in a statutory enactment, the General Assembly has exceeded any of the limitations upon its legislative power which are provided for in the Constitution, and to interpret the meaning of the words used by the General Assembly in a statutory enactment; but this court does not have any authority to repeal a statute enacted by the General Assembly, or even to amend it so as to make it read as this court believes the General Assembly should have made it read. The power to repeal or amend a statute is vested by Section 1 of Article II of the Constitution in the General Assembly.

Decision affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.