Matthias; J.
In this case we are once again faced with an interpretation of the following provision of Section 5709.07, Revised Code, which is pertinent to the present case:
“* * * houses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof * * # shall be exempt from taxation. ’ ’
The question raised by the present case is whether vacant land purchased by a religious institution for the purpose of erecting a church thereon some time in the future is entitled to exemption from taxation under the above-quoted provision or whether there must be a present actual use for the designated purpose before the right to exemption arises.
We determined in Carney, Aud., v. Cleveland City School District Public Library, 169 Ohio St., 65, 157 N. E. (2d), 311, that property owned by the public is exempt from taxation even though there is no present actual use of the property by the public, as long as such property is not devoted to a commercial use. The first paragraph of the syllabus of that case reads as follows:
“Where an entity, which under the law is entitled to have its property exempted from taxation, acquires real property with the intention of devoting it to a use exempting it from taxation, such property is entitled to be exempted from taxation, as long as it is not devoted to nonexempt or commercial use, even though actual physical use of the property for the exempt purpose has not yet begun. (Orthodox Hebrew Board of Education v. Tax Commissioner, 155 Ohio St., 380, overruled.) ”
The Board of Tax Appeals determined that although such rule may apply to public property it does not, under the wording of Section 5709.07, Revised Code, apply to a private religious institution.
*105 Although it is true that statutes exempting property from taxation must be strictly construed, such construction must be reasonable. In re Bond Hill-Roselawn Hebrew School, 151 Ohio St., 70, 84 N. E. (2d), 270. Furthermore, in construing any tax-exemption statute, the basis and purpose of tax exemption must be kept in mind.
The basis for tax exemption is the public benefit, and the ultimate purpose of tax exemption, whether in relation to public property or nongovernmental property, is to insure that property, or funds devoted to one public benefit shall not be diminished by diverting such funds by means of taxation to another public benefit.
It is of course axiomatic that services which are for the public benefit are not confined purely to public or governmental operations. Many nongovernmental entities such as hospitals and churches are considered to be operated for the benefit of the public.
In the course of the opinion in the Carney case, at page 67, it is said:
“Where the entity is nongovernmental in character, deriving its funds from voluntary contributions and perhaps from charges for its services, the exemption is also based on public benefit. That is, nongovernmental entities which have been granted tax exemptions are entities that operate for the benefit of the public. Since the sole legitimate purpose of taxation is to benefit the public, to tax property already devoted to public use would be merely to divert funds from one public benefit to another.” See, also, City of Cleveland v. Carney, Aud., 169 Ohio St., 259, 158 N. E. (2d), 895.
It is of course urged that, since there is no present actual use of this property for a house of worship, it is not being used for the public benefit. Must there be a present physical use of this property to create the right to a tax exemption?
We had before us in the Carney case (169 Ohio St., 65) this precise question as to public property. In determining that under certain circumstances actual physical use is not essential to give rise to the exemption, it is stated in the course of the opinion:
“It is a matter of common knowledge that, even though *106 property is acquired for an intended nse, actual physical occupancy cannot begin immediately. Even where, as in the present case, there is an existing physical structure, there are usually certain structural changes necessary to make it fit the needs of the purchaser. Granting the availability of funds, plans must be prepared, bids let and the actual construction work take place. All these preparations consume time during which actual physical use cannot begin.
“In instances where a structure must be built before an actual physical use can begin, in addition to the preparation of plans, the letting of bids and the actual construction, quite frequently it is necessary to procure funds, either by appropriation, the selling of bonds by a governmental entity or, in the case of nongovernmental entities, by voluntary contributions. All these matters necessarily consume time during which there can be no actual physical use. í Í * #
“It is unrealistic to differentiate between those instances where the property acquired for an intended public use is under construction and where construction has not yet begun.
“It is the purpose and intent of the tax-exemption statutes with which we are concerned that the funds of the exempt entity be devoted exclusively to the benefit of the public for that particular use, and to so differentiate and deny an exemption to property acquired for such use but not presently so used would defeat the purpose of the exemeption statutes.
“Thus, where an entity, which under the law is entitled to have its property exempted from taxation, acquires real property with the intention of devoting it to a use exempting it from taxation, such property is entitled to be exempted from taxation, as long as it is not devoted to a nonexempt or commercial use, even though actual physical use of the property for the exempt purpose has not yet begun.
“In other words, it is not necessary that actual physical use of property for an exempt purpose be commenced before it is entitled to be exempted from taxation. It is sufficient if it is acquired by the organization entitled to the exemption, with the intention of devoting it to an exempt use.” See, also, In re Application for Exemption from Taxation, 165 Ohio St., 180, 131 *107 N. E. (2d), 152; Good Samaritan Hospital Assn. of Sandusky v. Glander, Tax Commr., 155 Ohio St., 507, 99 N. E. (2d), 473; and In re Application of Ohave Scholem Congregation, 156 Ohio St., 183, 101 N. E. (2d), 767.
Although such statements were made in considering the exempt status of public property, we think they are equally applicable to a nongovernmental entity.
Clearly, a private religious institution would be beset with the same problems as, if not greater than, those confronting a governmental entity. Necessarily, under ordinary circumstances a period of time must elapse between the time of the acquisition of the land and the actual construction and occupancy of the building. Plans must be prepared, surveys made and, perhaps most important of all, funds raised, all of which, especially as to a nongovernmental entity which does not have access to tax revenues, must necessarily take time. To tax the property during such period prior to actual construction would be to subvert the purpose of the tax exemption.
However, so far as nongovernmental entities are concerned, mere ownership, standing alone, is not sufficient to create a right to tax exemption. Such ownership must be coupled with the purpose, supported by tangible evidence, that the property will be devoted to an actual physical use for the public benefit. The intent to use such property for an exempt purpose must be one of substance and not a mere dream that sometime in the future, if funds can be obtained, the entity would so use such property. In other words, it must be shown that the entity, at the time the application for exemption is made, is actively working toward the actual use for the public benefit. Evidence that surveys have been made and plans drawn or that active fund-raising campaigns are being carried on is indicative that the exempting use will be made of the property within a reasonable time.
Thus vacant land purchased by a religious institution for the purpose of erecting a church thereon is entitled to be exempted from taxation if the institution can present evidence that it is actively working toward an actual use of such property for a house of worship.
In the case presently before us, the evidence indicates that even in 1956, when this land was acquired by appellant, a start *108 had been made to procure funds for the erection of the church, that in 1958, the year when the exempt status is claimed to have begun, plans had been prepared and funds were available for the construction of the church, and that construction actually began in 1959. Under the circumstances, it is clear that, from 1958 on, the property here in question was and is entitled to be exempted from taxation.
The decision of the Board of Tax Appeals denying the remission of taxes for the years 1958 and 1959 and dismissing the application for exemption for 1960 is unreasonable and unlawful and must, therefore, be reversed.

Decision reversed.

Taft, Bell and O’Neill, JJ., concur.
Weygandt, C. J., Zimmerman and Herbert, JJ., dissent.