Bell, J.
Section 5731.09, Revised Code, as of the date of accrual of the tax imposed herein, read in the parts pertinent hereto, as follows:
“The succession to any property passing to or for the use of * * * any established religious organization, within this state * * * or any established religious organization within any state of the United States, which does not impose an inheritance, estate, or transfer tax on property given, devised, or bequeathed by a resident thereof to * * * any established religious organization, within this state * * * shall not be subject to Section 5731.02 of the Revised Code [imposing the tax on successions passing at a decedent’s death].”
The Tax Commissioner conceded in the courts below and in his briefs in this court that the state of Pennsylvania, where the board of pensions was incorporated, grants exemption from taxation on successions to religious organizations in Ohio.
Therefore, the sole question for determination here is simply: Is the Board of Pensions of the United Presbyterian Church in the United States of America a religious organization within the meaning of the provisions of Section 5731.09, Revised Code, in effect on July 19, 1958?
In In re Estate of Seaman, 166 Ohio St., 51, this court held that an organization which conducted religious activities as well as purely charitable activities was nevertheless entitled to have successions to it exempted from taxation, under the provisions of the statute which exempted gifts to an “institution for purposes only of public charity.” Three members of the court, the writer included, dissented from that decision for the reason that when the General Assembly said, “for purposes only of public charity,” it intended to exclude institutions which ear *91 ried on religious activities as well as charitable ones. The Seaman casé was followed, again by only four members of the court, in In re Estate of Miller, 171 Ohio St., 202.
In an effort, apparently, to avoid any further confusion on the question, the General Assembly amended Section 5731.09, Eevised Code (127 Ohio Laws, 561), to read as quoted above and so as to exempt a succession to an “established religious organization” from taxation. This is the first instance in which the amended version of the statute has been before this court.
The United Presbyterian Church in the United States of America is an unincorporated religious organization which has existed in this country and throughout the world for many years. It is governed by a constitution which provides, among other things, that the “general assembly is the highest judicatory of this church and shall represent in one body all the particular churches thereof.” The general assembly, which is made up of equal numbers of ministers and ruling elders (laymen) of the church, is, under the church constitution, given complete power, among many others, “of superintending the concerns of the whole church.”
Exercising the power given it by the church constitution, the general assembly caused the board of pensions to be incorporated as one of four nonprofit corporations designed to carry on the work of the church in the fields of Christian education, national and foreign missions, and pensions and welfare. The charter of the board of pensions, issued pursuant to a decree of the Court of Common Pleas of Philadelphia County, Pennsylvaniá, reads, in part, as follows:
‘ ‘ The business and affairs of the corporation shall be managed by a board of * * * directors * * * in conformity with instructions from the General Assembly of the Presbyterian Church in the United States of America * * * all of whom shall be elected by the general assembly * * * and all of whom shall be * * * members of the Presbyterian Church. * * *”
The purposes for which the corporation may exist, according to its charter, are in part as follows:
“(a) To acquire, receive and hold by gift, legacy, devise, purchase or otherwise, moneys * * * for and about the general *92 objects and purposes of sustentation, service pensions, relief and benefactions in the Presbyterian Church * * *.

ÍÍ# * #

“(c) To pay pensions and other benefits to those entitled to receive the same according to rules adopted by this corporation, and approved by the general assembly * * * from moneys collected from subscribers to or beneficiaries of the service pension fund, and from the churches and organizations respectively served by beneficiaries, and from payments, donations, and gifts of personal or real property heretofore or hereafter made to or for the said fund, and from income thereon.
“(d) To make grants to needy ministers and missionaries, who have served the Presbyterian Church * * * or any of the boards or agencies thereof in some salaried relationship * * *.
“(e) To provide other pensions, annuities or benefits to groups and classes of persons serving the Presbyterian Church * * * in such manner and under such conditions and provisions as may be proposed by the board of pensions and approved and authorized from time to time by the General Assembly of the Presbyterian Church * *
Several pensions plans are provided by the rules of the corporation, and the amounts of pensions paid vary according to the various plans. Those eligible to become members include only ministers, missionaries, commissioned workers and employees of the church and its boards. Membership in the various pension plans is not open to the general public and is not compulsory. However, the constitution of the church provides that a congregation calling a minister or commissioned church worker must agree in the call to pay to the board of pensions such percentage of the salary of the minister or commissioned worker as may be fixed by the general assembly of the church, provided the minister or worker is, or elects to be, a member of a pension plan provided by the board of pensions.
In short, the board of pensions is a corporation created and controlled by the general assembly of the church and existing solely for the benefit of those who have devoted their efforts to the promotion of the work of the church. As such, is it the type of organization that the General Assembly of the state of Ohio intended to exempt from payment of the succession tax when it amended Section 5731.09, Revised Code, to exempt *93 “any established religious organization” from such payment?
It is well settled in the law that statutes granting exemptions from taxes shall be strictly construed. It is also well settled that, although strict, the construction must be reasonable and not such as will defeat the legislative intent. In re Bond Hill-Roselawn Hebrew School, 151 Ohio St., 70; and In re Estate of Osborn, 159 Ohio St., 63, 67. That this represents the general rule in the United States is demonstrated by the following statement found in 85 Corpus Juris Secundum, 966, Section 1157:
“On the other hand, the rule of strict construction must never be applied to exclude the rule of reasonableness, or to render the exempting language so narrow and restricted as to defeat the apparent legislative intent; the statute is to be interpreted in the light of its obvious purpose, and the taxing power should not be extended by limiting the effect of exemptions given.”
In the discussion of the rule of strict construction, it is said in 2 Cooley on Taxation, 1415, Section 674:
“It simply means that if, after the application of all rules of interpretation for the purpose of ascertaining the intention of the Legislature, a well founded doubt exists, then an ambiguity occurs which may be settled by the rule of strict construction. The rule of strict construction does not relieve the court of the duty of interpreting the exemption by the ordinary rules of construction in order to carry out the intention of the Legislature, and does not apply where there is no language in the act justifying or requiring construction. A fair and reasonable construction of the statute * * * must always be adopted, giving the language used its ordinary meaning, and taking into consideration the purpose and spirit of the exemption as well as the public policy entertained at the time and the history of the times when the statute was passed. Strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption.”
There can be doubt in this case about only one word in the phrase used by the Legislature. The board of pensions has clearly been “established,” and it is equally clearly an “organization,” which, obviously, under the statute may be either *94 incorporated or unincorporated. May it also qualify as a “religious ’ ’ organization ?
The Legislature is presumed to have used the word, “religious,” in its ordinary meaning. 50 Ohio Jurisprudence (2d), 156, Section 181. Webster’s Third New International Dictionary defines the word as, “of or pertaining to religion; concerned with religion, teaching or setting forth religion.” It may be conceded from this record that the board of pensions, in its primary activity, does not “teach” or “set forth” religion as those words are used in the definition. Whether the board is “concerned with religion” or is “of or pertaining to religion” requires us, as pointed out in the Tax Commissioner’s brief, to examine the meaning of “religion” in the context that the word, “religious,” was used by the Legislature.
The Tax Commissioner relies heavily on the definition of “religion” stated by Judge Zimmerman in the dissenting opinion in In re Estate of Seaman, supra, as follows:
“The term, ‘religion,’ as it is generally understood in this country has reference to man’s relation to divinity — the recognition of God as an object of worship, love and obedience, with submission to and the carrying out of His will as outlined in the Holy Scriptures * *
From this definition and the subsequent action of the Legislature in amending Section 5731.09, Revised Code, the Tax Commissioner argues that the board of pensions is not a “religious organization” because it “is not a church; it does not advocate a system of faith or worship in a divine being. It maintains no services, no worship and has as such no religious doctrine.”
As stated previously, the writer of this opinion concurred in the dissenting opinion of Judge Zimmerman in the Seaman case because a religious organization, regardless of how it is defined, is not an institution “for purposes only of public charity. ’ ’
With the definition of “religion,” as stated in the Seaman case, we have no present quarrel. It may be questioned, however, whether it goes far enough. If the fundamental precept of religion may be accepted to be the Fatherhood of God and the brotherhood of man (a precept perhaps more all-inclusive than one which is confined to the “Holy Scriptures” associated usually with only the Judeo-Christian tradition), then religion *95 may be defined, as it is defined in one of the law dictionaries, as “real piety in practice, consisting in the performance of all known duties to God and our fellowmen.” Bovier’s Law Dictionary.
The public policy of this or any state which encourages religious beliefs and practices is not for the purpose of conferring favor upon religious organizations as such but is promoted in order that the benefits flowing from such beliefs and practices may redound to all the citizens of the state. If that public policy is to be promoted effectively, religion needs men and women who are dedicated to a system of faith and worship and to the teaching of that system. It might be hoped that there would be such men and women even though there were neither salary nor pension available to them. And there are, of course, many laymen who devote much time to that promotion without benefit of monetary reward. But the realities of present-day economics make the likelihood of sufficient persons of the stature and disposition of St. Francis of Assisi a distinct improbability.
Pensions and relief programs have become an accepted concomitant of employment today. And the availability of a pension plan undoubtedly is a contributing factor in inducing persons to become full-time workers in the field of religion. The bulk of the funds available for pensions comes from payments by churches of a percentage of their ministers ’ salaries. Money to make these payments comes, in turn, from the contributions of members of the congregation. Although he was speaking of pensions for policemen, the following words of Judge Stewart, when he wrote in State, ex rel. Hall, v. Board of Trustees, 149 Ohio St., 367, 375, are appropriate here:
“Pension funds are authorized and established by an appreciative public [congregation] for the purpose of giving future security to the courageous protectors of the property and persons [spiritual welfare] of the citizens of a community. Through the means of a pension fund, it is possible to attract to the police [church] service men [and women] with courage, loyalty, devotion, ability and integrity.”
Funds available for such pensions must be managed and payments must be made under plans. The General Asembly of the United Presbyterian Church in the United States of America could do this itself with the funds available for its *96 pension system, and successions to the church would unquestionably be exempt under the provisions of the succession tax statute. The general assembly has, however, delegated this function to another organization within the general structure of the church organization. The undisputed evidence in this case shows that the purposes and activities of the board of pensions are solely in the interest of those who are primarily responsible for promoting the doctrines and the practices of the church which caused the board to be created and which entirely controls and finances its operation. Although the board is an organization separate from the church, it is at the same time an inseparable part of the larger organization which is the church. In our opinion, the board of pensions is such a “religious organization” as the Legislature intended to be included within the language of Section 5731.09, Revised Code.
We do not believe this conclusion, at which we have arrived, implies, nor do we believe the Tax Commissioner seriously contends as he stated in his brief, that such holding will mean that all activities of a church whether related in any way to the promotion of its faith will be exempt from taxation and that “bingo games will come under an air of sanctity unheard of in our history.” Any organization seeking exemption as to the succession tax must meet the test established by the Legislature of being an “established religious organization” and can not qualify for such exemption merely by showing that funds derived from some nonreligious activity are being used for a religious purpose.
The judgment of the Court of Appeals is accordingly reversed.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taet, Matthias and O’Neill, JJ., concur.
Herbert, J., not participating. '