Lanzinger, J.,
dissenting.
{¶ 90} Property-tax exemptions are to be strictly construed because they are in derogation of equal rights. Cincinnati College v. State, 19 Ohio 110, 115 (1850). The exemption for a house of. public worship, R.C. 5709.07(A)(2), exempts “[hjouses used exclusively for public worship * * * and the ground attached to them that is not leased or otherwise used with a view to profit and that is necessary for their proper occupancy, use, and enjoyment.” (Emphasis added.)
{¶ 91} I cannot accept that interpreting the word “exclusively” to mean “primarily” in this case is a strict construction of this property-tax exemption. For more than a century, this court has interpreted language virtually identical to that contained in R.C. 5709.07(A)(2) as standing for the principle that “[t]he exemption is not of such houses as may be used for the support of public worship; but of houses used exclusively as places of public worship.” (Emphasis sic.) Watterson v. Halliday, 77 Ohio St. 150, 173, 82 N.E. 962 (1907).
{¶ 92} The word “exclusively” as used in the statute has to mean something. The origin of the “primary use” test applied by the majority can be traced to our decision in In re Bond Hill-Roselawn Hebrew School, 151 Ohio St. 70, 84 N.E.2d 270 (1949), in which we considered whether the public-worship exemption applied to a building where the first floor was “used exclusively for public worship” and the second floor was used as living quarters for a caretaker’s family. Id. at 71. We first observed that an overly literal construction of the exemption could prevent every application of the exemption, since “[i]t would not be difficult to show some slight use of any church building for a purpose other than public worship,” for example, when a room of the church was used to entertain children during church services, when part of the church building was used for Boy Scout meetings, or when part of the church was used to prepare a church supper. Id. at 72-73. We reversed the Board of Tax Appeals’ holding denying the exemption *239 as an unreasonable interpretation of its application to the church building. Id. at 78.
{¶ 93} In a later ease, the question was whether the parish hall in the basement of a building housing a church qualified for the R.C. 5709.07 exemption. Bishop v. Kinney, 2 Ohio St.3d 52, 442 N.E.2d 764 (1982). The BTA had found that the primary use of the parish hall, which was used in part as classrooms for religious education, retreats, a summer Bible school, and post-worship breakfasts, “was religious in nature” but not used “exclusively for public worship” because it was also used for social gatherings and bingo games. Id. at 52. We held that a tax exemption for the parish hall was proper because the BTA found that the primary use of the parish hall was religious in nature and the tax commissioner had conceded that the primary use constituted “public worship” within the meaning of R.C. 5709.07. Id. at 54.
{¶ 94} Thus, we applied the primary-use test in both Bond Hill and Bishop to determine whether an auxiliary use of a building otherwise used exclusively for public worship affected the tax-exempt status of those buildings. See Summit United Methodist Church v. Kinney, 7 Ohio St.3d 13, 15, 455 N.E.2d 669 (1983) (the educational wing of a parish center used as Sunday school classrooms and leased to a public university, which used the space as a day-care center during the week, was not primarily religious in nature and not entitled to an exemption under R.C. 5709.07). We have also applied the primary-use test to determine whether buildings or land surrounding buildings used exclusively as churches defeated tax-exempt status. Faith Fellowship Ministries, Inc. v. Limbach, 32 Ohio St.3d 432, 436-438, 513 N.E.2d 1340 (1987) (lead opinion) (a chapel in a church complex used for children’s church services in the summer and adult church services in the winter was exempt from taxation; a building used as a boiler building was necessary for the operation of exempt buildings on the church complex and consequently exempt under the primary-purpose test; buildings used as a cafeteria, sleeping rooms, a gymnasium, and a retreat house were merely supportive of or incidental to the public-worship function and not exempt from taxation; and a building used for storage and a vacant building were not exempt from taxation); Full Gospel Apostolic Church v. Limbach, 46 Ohio St.3d 195, 196, 546 N.E.2d 403 (1989) (the sporadic use of 47 acres surrounding a church sanctuary and associated buildings for outdoor revivals and congregational services did not satisfy the primary-purpose test as applied to surrounding areas).
{¶ 95} In each of the cases cited by appellant and the majority in support of the primary-purpose test, that test was applied to determine whether the exemption applied to buildings or portions of buildings auxiliary to traditional church buildings or, in other words, to buildings used exclusively for public *240 worship. See majority opinion at ¶ 22. In other words, we have applied the primary-purpose test to those auxiliary buildings or portions of buildings only when there existed a primary building used exclusively for public worship. Never before have we expanded the exemption, which again must be strictly construed, to property like the one in the present case — a radio station, which is so clearly unlike the traditional church buildings exclusively used for public worship to which we have applied the exemption in the past.
Isaac, Wiles, Burkholder & Teetor, L.L.C., and Brian M. Zets, for appellant.
Michael DeWine, Attorney General, and Daniel G. Kim, Assistant Attorney General, for appellee Tax Commissioner.
{¶ 96} There is no church here.
{¶ 97} I accordingly dissent, and I join Chief Justice O’Connor’s dissent in full.
O’Neill, J., concurs in all but the final sentence of the foregoing opinion.