MORAINE HEIGHTS BAPTIST CHURCH, APPELLANT, *v.* KINNEY, COMMR., APPELLEE.

[Cite as Moraine Hts. Baptist Church *v.* Kinney (1984), 12 Ohio St. 3d 134.]

(No. 83-1591—Decided July 18, 1984.)

*Messrs. Cohen, Gregg, Slonaker & Laurito, Mr. Michael P. Moloney* and *Mr. Douglas B. Gregg,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellee.

*Per Curiam.* The issue before this court is whether appellant's entire church camp qualifies for a tax exemption within the purview of R.C. 5709.07.

R.C. 5709.07 provides, in pertinent part:

"* * * [H]ouses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, * * * shall be exempt from taxation."

The phrase "used exclusively for public worship" has been construed by this court to be equivalent to "primary use." Accordingly, an exemption is allowable under R.C. 5709.07 if the property is used primarily for purposes of public worship. *In re Bond Hill-Roselawn Hebrew School* (1949), 151 Ohio St. 70, 77-78 [38 O.O. 527]; *Bishop* v. *Kinney* (1982), 2 Ohio St. 3d 52, 53; *Summit United Methodist Church* v. *Kinney* (1983), 7 Ohio St. 3d 13.

Thus, in *Bond Hill, supra,* this court reviewed a decision of the board denying an exemption to a Hebrew school due to the fact that a caretaker and his family were permitted to live in three rooms located above the first floor of the building. In reversing the board's decision, it was stated:

"There are many activities conducted in church buildings which do not constitute public worship but which are designed to encourage people to use the church for public worship. The use of a room in the church to entertain young children while their parents attend church services is not a use for public worship. The use of the church building for meetings of boy scouts is not a use for public worship. The use of part of the building for the preparation of food for a church supper and the eating of such food are not uses for public worship. Certainly it was not the intention of the people that their words, 'used exclusively for public worship,' should be so literally construed that any such uses would prevent tax exemption of a church building." *Id.* at 72-73.

The rationale employed in *Bond Hill* was recently relied upon in *Bishop, supra,* wherein the board denied a tax exemption for a parish hall used primarily for religious purposes, but also used for social gatherings. Again, this court reversed, concluding that the primary use of the building must control, and since the parish hall was primarily used for public worship, the incidental activities taking place therein did not defeat the exemption.

More recently, in *Summit United Methodist Church, supra,* we reviewed a decision of the board denying a tax exemption under R.C. 5709.07 to the educational wing of a parish center. This portion of the building was used on Sundays by the taxpayer for Sunday school classes; however, on weekdays the facility was leased to and used by the Ohio State University as a day care center for the children of faculty, staff and students. In sustaining the denial of the exemption, we concluded there was "* * * sufficient evidence in the record to support the board's finding that * * * [the taxpayer's] uses of the property were not primarily religious in nature." *Id.* at 15.

Appellant maintains that the board disregarded the "primary use" test in favor of an "exclusive use" test when denying an exemption for the entire church camp. Stated otherwise, appellant argues that the board has taken an unreasonably strict view of the term "public worship" as utilized within R.C. 5709.07.

The board reasoned that the land and buildings adjacent to the chapel are used primarily for housing and recreational activities. While this conclusion is well-supported by the record, appellant contends that although recreational activities are conducted to entertain the youth attending the camp, the primary use of the camp and its facilities is to create an atmosphere conducive to the worship of God. Appellant further contends that the camp-like environment promotes a better atmosphere to instill Christian principles.

Initially, we note that "[i]n reviewing decisions of the board, this court has repeatedly stated that it is not a trier of fact *de novo,* but that it is confined to its statutorily delineated duties (R.C. 5717.04), of determining whether the board's decision is 'reasonable and lawful.' " *Episcopal Parish* v. *Kinney* (1979), 58 Ohio St. 2d 199, at 201 [12 O.O.3d 197]. See, also, *Summit United Methodist Church, supra,* at 15. Appellant's argument, essentially, constitutes a request that this court reweigh the evidence in violation of the aforementioned principle.

The record demonstrates that of the forty-nine acres sought to be exempted, only the chapel is used primarily for public worship, and it has been exempted from taxation. The balance of the land, including the lodging facilities, swimming pool, cafeteria, as well as the recreational and nature areas, are, at best, merely supportive of appellant's goal to promote worship.

In fact, the boys' and girls' lodging sought to be exempted, as well as the cafeteria and shower facilities, are functionally equivalent to the parsonages previously denied exemptions in a prior line of cases by this court. See, *e.g., Gerke* v. *Purcell* (1874), 25 Ohio St. 229; *Watterson* v. *Halliday* (1907), 77 Ohio St. 150; *Society of the Precious Blood* v. *Bd. of Tax Appeals* (1948), 149

Ohio St. 62 [36 O.O. 403]; *New Haven Church of Missionary Baptist* v. *Bd. of Tax Appeals* (1967), 9 Ohio St. 2d 53 [38 O.O.2d 129].

In *Gerke* v. *Purcell, supra,* an exemption was denied for a parsonage which had been built on ground which otherwise may have been tax exempt. The rationale employed by the court, which is particularly applicable to the present cause, was as follows: "The exemption [now R.C. 5709.07] is not of such houses as may be used for the support of public worship, but of houses used exclusively as places of public worship." (Emphasis deleted.) *Id.* at paragraph ten of the syllabus. The cafeteria, lodging structures, shower and restroom facility and the shelter house sought to be exempted herein are also merely supportive of appellant's overall goal to promote worship; they are, however, as evinced from the record, primarily used for purposes of serving food, or as places to shower or sleep, and not as places of public worship. As such, the board acted neither unreasonably nor unlawfully in denying a tax exemption for these facilities under R.C. 5709.07.

Furthermore, the record fully supports the board's denial of an exemption for appellant's outdoor facilities, including the swimming pool, basketball and shuffleboard courts, as well as the remaining unimproved areas of the church camp. Although appellant contends those areas are vital to the camp for the purpose of entertaining youth in an atmosphere in which worship is the primary goal, nevertheless, this portion of the church camp does not qualify for an exemption under R.C. 5709.07.

Unlike the exemption under R.C. 5709.12, which exempts all institutional land and buildings used exclusively for charitable purposes, the exemption contained under R.C. 5709.07, insofar as it applies to churches, is more restrictive, exempting only "houses used exclusively for public worship * * * and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof * * *." In view of the fact that the swimming pool, basketball and shuffleboard courts, as well as the remainder of appellant's unimproved property constituting the vast majority of the forty-nine acre church camp, are neither buildings used exclusively for public worship, nor necessary for the proper occupancy, use and enjoyment of the tax-exempt chapel, we conclude that the board's denial of an exemption to this property is, likewise, both reasonable and lawful.

Alternatively, appellant argues that the board erred in failing to exempt the church camp under R.C. 5709.12 as property "used exclusively for charitable purposes," as that phrase is defined under R.C. 5709.121. Of particular interest is the fact that this issue was never addressed by the board in its decision. The commissioner contends that the charitable exemption issue was not addressed due to appellant's failure to specifically raise the issue in its notice of appeal to the board.[2] Having examined appellant's notice of ap-

---

[2] Appellant's notice of appeal to the board provided, in relevant part:

"2. The Order of the Commissioner of Tax Equalization, adopting and incorporating the recommendation of the examiner dated October 3, 1980, found that other buildings located on

peal filed with the board, we conclude, for the reasons which follow, that the notice did not confer jurisdiction upon the board to consider whether the church camp was entitled to a charitable exemption in conjunction with R.C. 5709.12.

R.C. 5717.02 governs appeals to the Board of Tax Appeals. At the time appellant instituted its appeal to the board, R.C. 5717.02 provided, in relevant part:

"* * * The notice of appeal shall set forth, or have attached thereto * * * a true copy of the notice sent by such commissioner to the taxpayer of the final determination complained of, *and shall also specify the errors therein complained of.*" (Emphasis added.)

This court has consistently held that "[u]nder R.C. 5717.02, a notice of appeal does not confer jurisdiction upon the Board of Tax Appeals to resolve an issue, unless that issue is clearly specified in the notice of appeal." *Cleveland Elec. Illum. Co.* v. *Lindley* (1982), 69 Ohio St. 2d 71, 75 [23 O.O.3d 118]; *Lenart* v. *Lindley* (1980), 61 Ohio St. 2d 110 [15 O.O.3d 152]; *Abex Corp.* v. *Kosydar* (1973), 35 Ohio St. 2d 13 [64 O.O.2d 8]. Moreover, in *Gochneaur* v. *Kosydar* (1976), 46 Ohio St. 2d 59, 66 [75 O.O.2d 142], it was stated that "* * * this court will not reverse a decision of the board where the notice of appeal to the board does not enumerate in definite and specific terms the precise errors claimed." See, also, *Queen City Valves, Inc.* v. *Peck* (1954), 161 Ohio St. 579 [53 O.O. 430].

The fatal error contained in appellant's notice to the board is that while the second paragraph of the notice does specifically raise the question of whether the subject property is used for purposes of public worship in conjunction with R.C. 5709.07, the third paragraph does not clearly specify any error in relation to an exemption under R.C. 5709.12 or 5709.121. Paragraph three of the notice can fairly be said to merely place in issue the question of whether appellant's property is used with a view to profit.

An ambiguity arises due to the fact that the exemptions under R.C. 5709.07 and 5709.12, as defined in R.C. 5709.121, each deal with property which is not used with a "view to profit." Thus, by failing to specify R.C. 5709.12 or R.C. 5709.121, or even including within its notice of appeal the term "charitable," appellant's notice simply raises the issue of whether the

---

the tract are not being used for the purposes of public worship, and therefore are not entitled for exemption. This is inconsistent with the actual facts and usage of the real estate by the Applicant, as regardless of the type of gathering or recreation which may be involved, and sole purpose for the use of said real estate by the Applicant is for public worship and the promotion of religion.

"3. The Order of the Commissioner of Tax Equalization, adopting and incorporating the recommendation of the examiner dated October 3, 1980, found that the property in question is leased or otherwise used with a view to profit. This is factually incorrect as donations or other income are only accepted as a means to partially off-set the expenses. The applicant has no intent or belief that it will ever make a profit, and has never refused the use of the property to other religious groups or persons who are unable to make any donation."

property was being used primarily for purposes of public worship, and with a view to profit, each of which is a consideration under R.C. 5709.07. As such, the board was without jurisdiction to consider whether appellant's church camp should have received a charitable exemption in accordance with R.C. 5709.12.

For the foregoing reasons, the decision of the Board of Tax Appeals is hereby affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., concurs separately.

LOCHER, J., dissents.

HOLMES, J., concurring. I concur in the judgment, in that technically the operation of the church camp, other than the chapel which is exempt as a place used exclusively for public worship, would fall within a charitable use, and should be held tax exempt for that use. The appellant, unfortunately, did not set forth the necessary claim in this regard upon its notice of appeal. Appropriate application by the church should be instituted to establish its charitable tax status.

LOCHER, J., dissenting. Since I believe that the property in question is primarily used for public worship with no view to profit, I dissent.

The majority recites the proper standard for the R.C. 5709.07 exemption: it is allowed if the property is used primarily for purposes of public worship. It is my opinion that this church camp is so used. Any religious congregation, to perpetuate itself, must attract and keep the youth of its members. The methods used in achieving this purpose are all part of the worship experience of the church. The purpose behind the religious exemption is to allow greater freedom of religious practice. Such a purpose is not served by making it more difficult to retain congregational members.

The camp facilities and activities are especially conducive to attracting youths to the worship experience. The definition of religious worship should not be confined solely to formal church services. Camp participants are exposed to an atmosphere which promotes religious training within an understandable and enjoyable realm. Anyone who has attended church services, regardless of denomination, is aware of the inability of children to comprehend what is occurring, and their resulting disinterested attitude. Activities that can pique a child's interest, and at the same time provide religious instruction, are part of the worship experience of that child.

It would be different if this camp were designed for profit. In this regard

the case is different from *Summit United Methodist Church* v. *Kinney* (1983), 7 Ohio St. 3d 13, where building rent and utility costs were paid by outside users. Here, five weekly leases garnered nothing more than a partial offset of the camp costs.

In *In re Bond Hill-Roselawn Hebrew School* (1949), 151 Ohio St. 70 [38 O.O. 527], this court stated at 72-73:

"There are many activities conducted in church buildings which do not constitute public worship but which are designed to encourage people to use the church for public worship. The use of a room in the church to entertain young children while their parents attend church services is not a use for public worship. The use of the church building for meetings of boy scouts is not a use for public worship. The use of part of the building for the preparation of food for a church supper and the eating of such food are not uses for public worship. Certainly it was not the intention of the people that their words, 'used exclusively for public worship,' should be so literally construed that any such uses would prevent tax exemption of a church building." See, also, *Bishop* v. *Kinney* (1982), 2 Ohio St. 3d 52.

Having perceived no difference between the rooms within the church and property just outside, I would extend the language of *Bond Hill* to include a camp such as this.