FAITH FELLOWSHIP MINISTRIES, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., ET AL., APPELLEES.

[Cite as Faith Fellowship Ministries, Inc. *v.* Limbach (1987), 32 Ohio St. 3d 432.]

(No. 86-746—Decided September 30, 1987.)

433

*Rogers & Olivas* and *R. T. Rogers,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellees.

MOYER, C.J. Appellant presents five propositions of law, two of which will be disposed of as one. For the reasons which follow, the decision of the BTA is affirmed in part and reversed in part.

## I

By its first proposition of law, appellant urges this court to liberally apply the exemption provided in R.C. 5709.07.

As the appellees argue, such an application would be inconsistent with the well-established rule that "[e]xemption is the exception to the rule, and statutes granting exemptions are strictly construed." *White Cross Hospital Assn.* v. *Bd. of Tax Appeals* (1974), 38 Ohio St. 2d 199, 201, 67 O.O. 2d 224, 225, 311 N.E. 2d 862, 863. Appellant's first proposition of law is overruled.

## II

Next, appellant asks this court to adopt a definition of worship which is not restricted to any particular form of worship but would include all acts that give expression to an individual's relationship to God. Testimony before the BTA indicated that the witnesses for the appellant were proponents of worship being defined as any act that would draw that individual closer to his or her God. One of the witnesses testified that her presence to testify on behalf of the church at the BTA hearing was a form of worship. Appellant argues that its broad definition of "worship" is in conformity with Section 7, Article I of the Ohio Constitution which provides for the right of religious worship, and that a more restrictive definition would be in violation of this constitutional provision.

A review of the contemporary cases reveals that this court has not recently stated a definition of "public worship." However, past decisions have described "public worship" in terms of what real property is used exclusively as a house of public worship and what property is not. The exemption is constitutionally incorporated and legislatively enacted. The language of R.C. 5709.07 has remained relatively unchanged since the creation of the exemption:

"* * * [H]ouses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit * * * shall be exempt from taxation. * * *"

In the very early case of *Gerke* v. *Purcell* (1874), 25 Ohio St. 229, this court considered virtually the same language as appears in R.C. 5709.07 in reviewing a petition to enjoin the collection of taxes levied upon parochial schoolhouses, playgrounds, and parsonages for which an exemption was claimed. While discussing the schoolhouses and playgrounds, the court considered the term "public." The court stated the following at 241-242:

"The word 'public' is used in various senses. It is sometimes applied to describe the use to which the property is applied; at others, to describe the character in which it is held. The circumstance that the use of the property is free, is not a necessary element in determining whether the use is public or not. If the use is of such a nature as concerns the public, and the right to its enjoyment is open to the public upon equal terms, the use will be public whether compensation be exacted or not. * * *

"* * *

"The exemption of 'burying-grounds,' 'houses used exclusively for public worship,' and 'institutions of purely public charity,' does not depend

on the ownership of the property. The uses that such property subserves, constitute the grounds for its exemption. The burying-grounds may be either public or private; but the houses of worship must be houses of *public* worship, and the institutions of charity must be of a charity that is *purely public.*"

When the *Gerke* court considered the exemption of the parsonage, it decided that it was not used exclusively for public worship. It was a place of private residence, even though the presence of the pastor was essential to conduct the services of public worship. Other persons, such as those in the congregation, were necessary to carry on public worship, and it was equally necessary that they have a place to live. Their residences, however, would not be considered exempt. The parsonage was viewed to be only supportive of public worship and not used as a place of public worship.

"Public" to the *Gerke* court meant that the use be an open use, a use that was equally available to the public. Since the use was to be one without a view to profit, the public use must be free as well.

This court again considered the exemption of parsonages in *Watterson* v. *Halliday* (1907), 77 Ohio St. 150, 82 N.E. 962. While again rejecting tax exemption to parsonages, the court described the distinction between a place of public worship and the parish house:

"The religious rites and ordinances of the church organization are celebrated or observed in the places of public worship, although occasionally the confessions of men are heard and the marriage ceremony is performed in the house of the priest. * * *" After describing the function of the parish house and the church building, the court said, "[b]ut it is clear that such houses are primarily places of resi-

dence, as the church building is primarily a place of public worship; * * *

"The exemption is not of such houses as may be used for the *support* of public worship; but of houses used *exclusively* as places of public worship." *Id.* at 172-173, 82 N.E. at 966.

This court described the celebrations which occur in a house of public worship as the religious rites and ordinances of the church organization. Although functions which are important to the administration of the church and its public worship occurred in the parish house, it was primarily a place of residence, while the church building was primarily a place of public worship.

These two cases have provided direction for this court in the years since their publication, and have been cited with approval as recently as in *Moraine Hts. Baptist Church* v. *Kinney* (1984), 12 Ohio St. 3d 134, 12 OBR 174, 465 N.E. 2d 1281. From both cases we can derive the definition of "public worship" to be the open and free celebration or observance of the rites and ordinances of a religious organization. This definition, while not expressed before, is implicit in all the decisions concerning this exemption, and is similar to the description found in Black's Law Dictionary (5 Ed. 1979) 1440:

"* * * In this country, what is called 'public worship' is commonly conducted by voluntary societies, constituted according to their own notions of ecclesiastical authority and ritual propriety, opening their places of worship, and admitting to their religious services such persons, and upon such terms, and subject to such regulations, as they may choose to designate and establish. * * *"

As we consider this definition, we must reject the definition proposed by

appellant. Appellant ignores the formal connotation which the word "worship" bears. The everyday expression of one's relationship with a supernatural power may be considered by that individual as worship. This court certainly does not intend to discourage such activity. However, the Constitution, which incorporates the exemption, and the statute, by which it is established, contemplate that the worship be a celebration of a religious rite in an open and free place and not the everyday activities of an individual which express devotion to his or her God. This proposition of law is overruled.

### III

In its third and fourth propositions of law, appellant argues that our role here is to determine whether the decision of the BTA is unreasonable or unlawful and, further, that the decision of the BTA is unlawful since it should have found the term "used exclusively" to mean used in furtherance of or incidental to public worship.[1]

We agree that this court's function is to review the decisions of the BTA to determine whether the decision is reasonable and lawful. We are not a trier of fact *de novo,* and will affirm the decision of the BTA where there is sufficient evidence of record to support the board's finding. *Episcopal Parish* v. *Kinney* (1979), 58 Ohio St. 2d 199, 12 O.O. 3d 197, 389 N.E. 2d 847; *Summit United Methodist Church* v. *Kinney* (1983), 7 Ohio St. 3d 13, 7 OBR 406, 445 N.E. 2d 669; *Moraine Hts. Baptist Church* v. *Kinney, supra.*

We have held that the primary use of the real property to be exempted under R.C. 5709.07 must be for public worship, and that uses which are merely supportive of public worship may not be exempted. *Bishop* v. *Kinney* (1982), 2 Ohio St. 3d 52, 2 OBR 594, 442 N.E. 2d 764; *Summit United Methodist Church* v. *Kinney, supra.* We reject appellant's argument that incidental or supportive uses of real property may also be exempted.

We have also held that R.C. 5713.04 permits real property to be split into exempt and taxable parts if the part which is used in the exempt manner can be precisely delineated, and this delineation is not the product of a calculation of a ratio of the part to be exempted to the whole of the property. A building may be divided perpendicularly as well as horizontally. *New Haven Church of Missionary Baptist* v. *Bd. of Tax Appéals* (1967), 9 Ohio St. 2d 53, 38 O.O. 2d 129, 223 N.E. 2d 366; *Bishop* v. *Kinney, supra.*

We have applied these well-established principles to the instant case, and conclude the following:

(1) The Agape room appears to be used in the same manner as the parlor and the sanctuary. The BTA neglected to mention in its decision that the Agape room was used for children's church services in the summer and church services for adults in the harsh winter months. The testimony of record clearly shows that the Agape room is used for the same purposes as are the areas of the complex that were granted exemption. No distinction reasonably can be made from the record,

---

[1] Such an argument is more appropriately made to the General Assembly where the policy decisions regarding the taxation and exemption of real property are made. This court, in earlier decisions, *Bishop* v. *Kinney* (1982), 2 Ohio St. 3d 52, 2 OBR 594, 442 N.E. 2d 764, and *Moraine*

*Hts. Baptist Church* v. *Kinney* (1984), 12 Ohio St. 3d 134, 12 OBR 174, 465 N.E. 2d 1281, has interpreted "used exclusively" to mean "used primarily" and not to mean uses which are merely supportive of the exempt use. We are not inclined to expand this definition.

and the Agape room, the minister's offices and the secretarial office are to be exempted from taxation.

(2) The other portions of Building C were properly determined to be nonexempt. The cafeteria, sleeping rooms, and gymnasium are merely supportive of the public worship which is conducted in the exempt portions. Appellant has not persuaded us to expand the established law, which is that real property, to be exempt under this provision, must be used primarily for public worship and not be merely supportive thereof or incidental thereto. *Gerke* v. *Purcell, supra; Watterson* v. *Halliday, supra; Moraine Hts. Baptist Church* v. *Kinney, supra.*

(3) Building D is used to house the retreat function of the complex and is not exempt as it merely supports the public worship conducted in the exempt portions.

(4) Building F is used for storage, and the BTA was not told what was stored in the building. The BTA correctly found that the burden was upon the taxpayer to establish the exempt nature of the use. Not establishing such exempt use defeats appellant's claim of exemption.

(5) Building G is vacant and not used. It cannot be considered exempt, as there must be a use or a planned purpose to use the property in the future "and not a mere dream." *Holy Trinity Protestant Episcopal Church* v. *Bowers* (1961), 172 Ohio St. 103, 107, 15 O.O. 2d 173, 176, 173 N.E. 2d 682, 685; *Peoples Faith Chapel, Inc.* v. *Limbach* (1985), 18 Ohio St. 3d 236, 237, 18 OBR 294, 295, 480 N.E. 2d 781, 782.

Finally, in determining whether the BTA correctly refused to exempt Building E, the boiler building, we are required to review the meaning of "primary use." The BTA determined that the boilers contained in this building provided heat for the entire complex and, since most of the buildings did not qualify for exemption, the building was determined to be not primarily used as a place of worship.

We have applied the primary-use test to other aspects of the tax laws and have regarded it to mean more than simply measuring the amount of time property is used in a taxable *vis a vis* a nontaxable use. As we stated in *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 48 O.O. 2d 169, 249 N.E. 2d 892, the primary use of such item has as much to do with the value of its direct contribution to the product which is processed as it does with the quantity of time that it is used in the nontaxable capacity. In that case, the court reviewed the taxability of a crane that was used both directly in manufacturing and not in manufacturing, and stated the following:

"* * * Necessarily, we are here and now moved to say that 'primary use' is not merely the quotient of the time that a device is utilized in a taxable, *vis a vis* a nontaxable, activity. 'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity. The value of the tool to the product is as important as the time the tool is engaged in fashioning the product." *Id.* at 140-141, 48 O.O. 2d at 171, 249 N.E. 2d at 895.

The logic of this case is equally compelling when the same primary-use test is to be applied to a real estate tax exemption. We hold that to qualify for exemption from real property taxation as a house used exclusively for public worship under R.C. 5709.07, such property must be used in a principal, primary, and essential way to facilitate the public worship.

It is profoundly clear that the public worship which was conducted in the exempt portions of appellant's complex would not have occurred had they not had enough heat to render them comfortable. We regard the boilers as

essential to the public worship use of the complex and, consequently, the building which housed the boilers to be exempt under the primary-use test.

Upon remand to the BTA, we further direct the BTA to review the exemption it granted to the land to determine that, as to those buildings concerning which we have reversed its decision and granted exemption, there also be exempted sufficient land necessary for their proper occupancy, use, and enjoyment.

## IV

In its fifth proposition of law, appellant maintains that, under certain exemption statutes, residential use of property is exempt from the tax and that it is denied equal protection of the law as its property of a residential nature is not exempt.

Appellant failed to raise this issue in its application filed with the commissioner and in its notice of appeal to the BTA. Having failed to articulate such a constitutional challenge during the proceedings before the commissioner, the appellant waives that challenge here. *Bd. of Edn. of South-Western City Schools* v. *Kinney* (1986), 24 Ohio St. 3d 184, 24 OBR 414, 494 N.E. 2d 1109.

For the foregoing reasons, the decision of the BTA is affirmed in part and reversed in part, and the cause is hereby remanded to the BTA for modification consistent with this opinion.

*Decision affirmed in part, reversed in part and cause remanded.*

SWEENEY and HOLMES, JJ., concur.

WRIGHT and H. BROWN, JJ., concur in the syllabus and in the opinion of LOCHER, J.

LOCHER and DOUGLAS, JJ., separately concur in part and dissent in part.

LOCHER, J., concurring in part and dissenting in part. To the extent that today's decision adds Building E (the boiler building) and parts of Building C (the Agape room, the minister's offices and the secretarial office) to the property of the appellant exempted from taxation under R.C. 5709.07, I concur in the judgment. However, because the nature of public worship has changed in recent years, today's decision does not go far enough. Accordingly, I respectfully dissent.

In its opinion, the majority admits that "this court has not recently stated a definition of 'public worship,'" but then merely adopts a definition of public worship that is essentially the same as that stated by this court at the turn of the century. In doing so, the majority ignores the fact that public worship today involves more than formal religious rites and ordinances. As I have previously pointed out:

"* * * Any religious congregation, to perpetuate itself, must attract and keep the youth of its members. The methods used in achieving this purpose are all part of the worship experience of the church. The purpose behind the religious exemption is to allow greater freedom of religious practice. Such a purpose is not served by making it more difficult to retain congregational members." *Moraine Hts. Baptist Church* v. *Kinney* (1984), 12 Ohio St. 3d 134, 139, 12 OBR 174, 179, 465 N.E. 2d 1281, 1285 (Locher, J., dissenting).

The life style of the people of Ohio has changed a great deal over the years, and the nature of public worship has changed with it. Formal church services today constitute only a portion of the worship experience, which now

encompasses religious retreats, camps, athletics, and other social and recreational activities. Because these activities are a part of modern public worship, the church facilities used in connection with them should not be deprived of tax-exempt status merely because they are not used primarily for religious rites and ordinances.

Accordingly, I would grant tax-exempt status to more of the church property than the majority and the BTA. Building D is entitled to tax exemption because it is used primarily for religious retreats. Building C contains meeting rooms, a cafeteria and a gymnasium that should also be exempt as being used primarily for public worship. Additionally, I would hold that the areas containing the swimming pool, playfield and nature trails are entitled to tax exemption. As this court stated in *In re Bond Hill-Roselawn Hebrew School* (1949), 151 Ohio St. 70, 72-73, 38 O.O. 527, 528, 84 N.E. 2d 270, 272:

"There are many activities conducted in church buildings which do not constitute public worship but which are designed to encourage people to use the church for public worship. The use of a room in the church to entertain young children while their parents attend church services is not a use for public worship. The use of the church buildings for meetings of boy scouts is not a use for public worship. The use of part of the building for the preparation of food for a church supper and the eating of such food are not uses for public worship. Certainly it was not the intention of the people that their words, 'used exclusively for public worship,' should be so literally construed that any such uses would prevent tax exemption of a church building."

Furthermore, it is my view that the words "used exclusively for public worship" in Section 2, Article XII of the Ohio Constitution are not meant to deprive church property of tax-exempt status when it is used for any purpose other than public worship. The term "exclusively" is intended to guard against the use of church property for purposes of profit. The property in question here clearly is not used for such purposes.

What is needed is a broader definition of public worship that incorporates the above-mentioned activities as well as religious rites and ordinances, and I urge the General Assembly to enact legislation to this end. This would promote the intent of Section 2, Article XII of the Ohio Constitution to encourage the use of church facilities for public worship, and it would bring the Revised Code up to date with the needs of the modern church.

In conclusion, I am disappointed that the majority did not take this opportunity to embrace a more enlightened view of what public worship means today. Because today's decision adopts an outdated and needlessly restrictive definition of public worship, I dissent.

WRIGHT and H. BROWN, JJ., concur in the foregoing opinion.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the judgment in part, and dissent in part. I would affirm the decision of the Board of Tax Appeals in all respects. Only if there is not sufficient evidence in the record to support the board's finding should we reverse the board's decision. To do otherwise would be substituting our decision, as we are doing here, for that of the board. I find, at the very least, sufficient evidence in this record to support the conclusions of the board. It is not our province to be a

"super board" and thereby render a different decision because we have interpreted the facts differently than has the board. While we have the ultimate authority, we should always remember that we are not final because we are infallible—we are only infallible *because* we are final.

Accordingly, I would affirm the decision of the Board of Tax Appeals.