[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 75.]

COLUMBUS BOARD OF EDUCATION, APPELLANT AND CROSS-APPELLEE, *v.*
TRACY, TAX COMMR.; GRANT MEDICAL CENTER (F.K.A. FRANKLIN HEALTH
CORPORATION), APPELLEE AND CROSS-APPELLANT.

[Cite as *Columbus Bd. of Edn. v. Tracy*, 1995-Ohio-213.]

*Taxation—Real property—Exemptions—Abutting vertical estates owned by
different entities must be considered separately for tax purposes.*

Separate estates can be created in a single structure. (*Cincinnati College v. Yeatman*
[1876], 30 Ohio St. 276, paragraph one of the syllabus, approved and
followed.)

(No. 94-1067—Submitted June 7, 1995—Decided August 16, 1995.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, Nos. 92-H-620 and
92-H-621.

———————————

{¶ 1} In this tax case, the property at issue concerns multiple parcels of land
located at 340 East Town Street, Columbus, Ohio. Prior to 1989, the building on
that property consisted of three floors, a first floor loading dock and two levels of
parking. The Franklin County Commissioners held legal title to the property and
Grant Medical Center ("Grant") (f.k.a. Franklin Health Center) occupied and used
the three-story building. Grant is an Ohio nonprofit corporation, organized and
established to maintain a hospital for general health care.

{¶ 2} During July 1989, Grant transferred, by a quitclaim deed, the airspace
above an elevation of 797.91 feet to Franklin Health Corporation. Parties other
than Grant built an additional seven floors on top of the original three-floor
building. Of the seven-story addition, the first three floors were used for parking,
three floors were rented to physicians for office space, and the remaining floor was

devoted to a health club, used by Grant's patients. The transferred airspace contained all seven floors of the addition.

{¶ 3} In 1990, the Columbus Board of Education ("the board") filed a complaint concerning the "exempt status of a portion of the aforementioned permanent parcels which contain an office building and health club above a high-rise parking lot at the Grant Medical Center." Later, the Franklin Health Corporation filed an application for exemption for 1991 for the original three floors, the health club and the additional three floors of parking. Franklin Health Corporation also requested the taxes and penalties remitted for tax year 1990. After hearings and a recommendation from the attorney-examiner, the Tax Commissioner found that the land and the original three floors were tax exempt for 1990 and 1991 and ordered remission of taxes for 1990. The Tax Commissioner also ordered that the floors of the addition, four through ten, were taxable and should remain on the tax list. The board appealed the Tax Commissioner's decision to the Board of Tax Appeals ("BTA"). The BTA did not hold additional evidentiary hearings and neither party presented additional evidence, other than some documents to clarify the record. The BTA affirmed the Tax Commissioner's decision holding the land and first three floors to be tax exempt.

{¶ 4} This cause is now before this court upon an appeal and cross-appeal as of right.

—————————

*Teaford, Rich, Coffman & Wheeler*, *Jeffrey A. Rich* and *Karol Cassell Fox*, for appellant and cross-appellee.

*Baker & Hostetler*, *Edward J. Bernert* and *George H. Boerger*; and *Timothy B. Mitchell*, for appellee and cross-appellant.

—————————

**COOK, J.**

{¶ 5} The BTA determined that the land and the original three floors of the ten-story building located at 340 East Town Street were exempt from taxation as being used exclusively for charitable purposes. For the reasons that follow, we find that the decision of the BTA is neither unlawful nor unreasonable. Accordingly, we affirm the decision of the BTA.

{¶ 6} R.C. 5709.12(B) provides in part:

"Real and tangible personal property belonging to institutions *that is used exclusively for charitable purposes* shall be exempt from taxation." (Emphasis added.)

{¶ 7} For the years in question, Grant no longer contests whether the top seven floors of the building were taxable. Likewise, the board of education does not contest the charitable-use status of the first three floors. Thus, the only issue for determination is the tax status of the land on which the ten-story building is located.

{¶ 8} The board contends that the land on which the building was located could not be considered as having been "used exclusively for charitable purposes" because seven floors of the building were not being used for tax- exempt purposes. The board, however, does not base its argument on a numerical percentage of exempt and nonexempt uses of the building, but argues that if any part of the multistory building is used for a nonexempt purpose, the underlying land cannot be tax exempt because the land is used with a "view to profit." *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals* (1976), 48 Ohio St.2d 122, 125, 2 O.O.3d 275, 277, 357 N.E.2d 381, 383.

{¶ 9} The contention of the board is flawed because it fails to recognize that the ownership of the land and first three floors of the building was separate and distinct from the ownership of the top seven floors. Title to the land and the first three floors was in the name of the Franklin County Commissioners. Title to the

airspace containing the seven-story addition was conveyed by quitclaim deed to Franklin Health Corporation. Thus, we find that the tax status of each estate must be determined separately from the other.

{¶ 10} In *Cincinnati College v. Yeatman* (1876), 30 Ohio St. 276, we considered a case involving a long-term lease for part of the second story of a building. In paragraph one of the syllabus, this court held that "[t]here may be several and distinct tenements in the same building, under the same roof, as well where one is over the other, as where one is *beside* the other." (Emphasis added.) We now recognize that separate estates can be created in a single structure.[1]

{¶ 11} In this case, there are two separate estates, each owned by different entities. By its terms, R.C. 5713.04, the split listing statute, is only applicable to property having "single ownership" and, therefore, is inapplicable to this property. While this case involved only one structure, two estates existed within that structure, and each estate was owned by a different entity. The land and the first three floors were owned by one entity, and the use of that property, considered as a separate entity, was determined to be tax exempt.

{¶ 12} We note that this court has had another occasion to consider the tax status of a multistory building, part of which was used for exempt purposes and part of which was used for nonexempt purposes. Prior to the enactment of the split-listing statute, R.C. 5713.04, this court considered the tax status of an eleven-story building owned by a charitable organization. In *Welfare Fedn. of Cleveland v. Glander* (1945), 146 Ohio St. 146, 32 O.O. 65, 64 N.E.2d 813. The charitable organization, which wholly owned the building, rented the first, second and part of

---

1. Moreover, by the way of analogy, the concept of treating airspace as a separate estate has been recognized by the General Assembly. Under R.C. 5501.45, the Director of Transportation, in certain situations, is authorized to sell space above the surface. R.C. 5501.45 provides that each unit created "shall for all purposes constitute real property and shall be deemed real estate within the meaning of all provisions of the Revised Code and shall be deemed to be a separate parcel for all purposes of taxation and assessment of real property and no other unit or other part of such lands shall be charged with the payment of such taxes and assessments."

the basement floors to noncharitable organizations. The owners asked the court to exempt those parts of the building used for charitable purposes, but because there was no split-listing statute in effect, the court denied the partial exemption requested. This court, however, stated, "[i]f there were different owners of the different floors, we would have a different question ***." *Id.* at 177, 33 O.O. at 78 - 79, 64 N.E.2d 813, 826.

{¶ 13} Finally, any suggestion of a percentage allocation of the land, based on the use of the entire building, we would note is not permitted. *Faith Fellowship Ministries, Inc. v. Limbach* (1987), 32 Ohio St.3d 432, 513 N.E.2d 1340. The court in *Faith Fellowship* held that land cannot be split on a percentage basis.

{¶ 14} In this case, each estate must receive separate tax treatment because there are two separate estates, owned by different entities. Just as abutting horizontal estates owned by different entities are considered separately for tax purposes, so must abutting vertical estates owned by different entities be considered separately. While the top seven stories were taxable, the land and the first three floors, comprising a different estate, were found to be used exclusively for charitable purposes. We find, therefore, viewing the land and the original three floors as a separate estate apart from the addition, that the decision of the BTA is neither unlawful nor unreasonable.

{¶ 15} We need not discuss the issues raised in the cross-appeal, because of the disposition of appellant's issues.

{¶ 16} For the foregoing reasons, we affirm the decision of the Board of Tax Appeals.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

_____