[Cite as *Vinyard Ministries, L.L.C. v. Levin*, 2014-Ohio-1911.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| VINEYARD MINISTRIES, LLC, | : | APPEAL NO. C-130381 |
| | | BTA NO. 2010-Q-2959 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| RICHARD A. LEVIN, TAX COMMISSIONER OF OHIO, | : | |
| Defendant-Appellee. | : | |

Appeal From:  Board of Tax Appeals

Judgment Appealed from is:  Affirmed

Date of Judgment Entry on Appeal:  May 7, 2014

*Kohnen & Patton, LLP,* and *Kimberly A. Pramaggiore,* for Plaintiff-Appellant,

*Michael DeWine*, Attorney General of Ohio, and *Thomas N. Anger*, Assistant Attorney General, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

CUNNINGHAM, Presiding Judge.

{¶1}   Appellant, Vineyard Ministries, LLC ("Vineyard"), a subsidiary of the Vineyard Community Church, appeals from a Board of Tax Appeals ("BTA") decision affirming the appellee tax commissioner's denial of a tax exemption for a 5,612-square-foot area located in the church's student ministries center.   The BTA determined that the area was primarily used for recreation and not for public worship.  Therefore, it did not qualify for the house of public worship exemption set forth in R.C. 5709.07(A)(2).   Because the BTA's decision upholding the tax commissioner's denial of the exemption is both reasonable and lawful, we affirm.

### Background Facts and Procedure

{¶2}   In 2007, Vineyard acquired an 8.352-acre parcel in Springdale that was adjacent to exempt property owned and used by the church.   Thereafter, Vineyard sought a tax exemption for the entire parcel, including an almost 100,000-square-foot building containing the church's student ministries center that had been constructed on the parcel.

{¶3}   The student ministries center includes a lobby and separate auditoriums and classroom areas for high school and middle school students.  The auditoriums, or sanctuaries as they are sometimes referred to, are used for the worship services, and the classrooms are used for Bible study, group prayer, and ministry training.

{¶4}   The student ministries center also houses the 5,612-square-foot area that is the subject of this appeal.  Located in that space are half-court basketball courts, surrounded by an area of recessed seats, and an open recreational area with concrete floors, video gaming stations, foosball tables, and moveable casual

furniture. The high-school side is separated from the middle-school side by a floor-to-ceiling "playground style chain link fence." A kitchen/snack shop with a soda fountain and vending machines is additionally found within the disputed area.

{¶5} The tax commissioner found that the majority of Vineyard's parcel was used "exclusively for public worship" and, therefore, was exempt from taxation under R.C. 5709.07(A)(2). The tax commissioner, however, denied the exemption with respect to the subject 5,612-square-foot area within the student ministries center, after finding that the area was used primarily for recreation and concluding that this use was merely supportive of public worship. Consistent with R.C. 5713.04, the tax commissioner split the property, exempting from taxation all but the 5,612-square-foot area.

{¶6} Vineyard appealed the tax commissioner's decision partially denying its application for the real-property exemption to the BTA. Upon review of the notice of appeal, the statutory transcript, and the testimony and evidence submitted at a hearing, the BTA affirmed the tax commissioner's decision. Vineyard now appeals to this court as provided by R.C. 5717.04.

### Assignment of Error

{¶7} In its sole assignment of error, Vineyard argues that the BTA erred in affirming the denial of the exemption because the record demonstrated that the contested area was primarily used for public worship as contemplated by R.C. 5709.07(A)(2).

{¶8} *Standard of Review.* Our standard of review of the BTA's decision is set forth in R.C. 5717.04. We must determine whether the BTA's decision was "reasonable and lawful." Under this standard, we will reverse a BTA decision that is based on an incorrect legal conclusion. *Cincinnati Community Kollel v. Testa*, 135

Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 16. But we will uphold the BTA's factual determinations if the record contains reliable and probative evidence to support them. *Id.*

{¶9} In applying this standard of review, we must be mindful that Vineyard had the burden of demonstrating that the property qualified for exemption and that statutes governing tax exemptions should be strictly construed against the claim of exemption. *Id.* at ¶ 17; *Faith Fellowship Ministries, Inc. v. Limbach*, 32 Ohio St.3d 432, 434, 513 N.E.2d 1340 (1987).

{¶10} *Public-Worship Exemption under R.C. 5709.07(A)(2).* Vineyard sought an exemption under R.C. 5709.07(A)(2), which exempts from taxation "[h]ouses used exclusively for public worship, the books and furniture in them, and the ground attached to them that is not leased or otherwise used with a view to profit and that is necessary for their proper occupancy, use and enjoyment." As contemplated by this statute, " 'public worship' means the open and free celebration or observance of the rites and ordinances of a religious organization." *Faith Fellowship Ministries* at paragraph one of the syllabus.

{¶11} *Primary-Use Test.* To qualify for the exemption set forth in R.C. 5709.07(A)(2), an applicant must demonstrate that property is used "to facilitate the public worship" in a "principal, primary, and essential way." *Id.* at paragraph two of the syllabus. This "primary-use test" is not an "exclusive-use test." *Bishop of Roman Catholic Diocese v. Kinney*, 2 Ohio St.3d 52, 442 N.E.2d 764 (1982); *Moraine Hts. Baptist Church v. Kinney*, 12 Ohio St.3d 134, 465 N.E.2d 1281 (1984). It requires an examination of the quantity and quality of the use. *Faith Fellowship Ministries* at 437-438. Although incidental uses are not controlling, the exemption will be denied

for a building or a room that is primarily used for a nonexempt purpose. *Bishop of Roman Catholic Diocese* at 53-54.

{¶12} *Evidence of Primary Use.* At the hearing before the BTA, Vineyard presented testimony from Jim Cochran, the Senior Associate Pastor of the church, and Matthew Milthaler, the Senior Director of Student Ministries at the church. According to these witnesses, the recreational area is not open for people to come in off the street to shoot free throws or to play video games. Youths who belong to the church or who are guests are invited to use the recreational and athletic equipment before and after the worship services and bible-study sessions that take place in the auditorium and the classrooms on Saturdays and Sundays. The recreational area is also the location of regular Friday night events, including dance parties with "DJs" and basketball-related competitions, which youths can attend for a small fee. Trained volunteers and staff serving out the ministry of the church are present during the recreational and sporting activities to interact with the youths.

{¶13} The recreational area is used for a week each summer during a large student conference involving worship, biblical teaching, and community service, and periodically throughout the year for student retreats on issues such as sexuality. Additionally, after the weekly worship service in the auditorium, youths in the junior high program meet in small groups with an adult leader for 20 minutes in the open recreational area. A photograph introduced into evidence depicting junior high youths meeting in a small group, however, showed other youths playing basketball in the recreational area at the same time.

{¶14} *BTA's Decision.* The BTA found that the import of this testimony demonstrated, as summarized by Vineyard, that the church uses this area and its recreation activities " 'to invite [youth] to a cool and fun setting where the youth

pastors and the students who are already church members can meet them, relate to them, have fun with them, and invite them into communal worship.' " The BTA did not reject the claimed value of the facilities in accomplishing this purpose, but it determined that the use was merely supportive of public worship.

## Analysis

{¶15} Vineyard argues that the primary use of the area is public worship because the recreational area brings the youths to the property for public worship and it is therefore necessary for the use of the property for public worship. Vineyard also contends that the recreational area, which is in the same building as exempt areas and is used for weekly small group meetings, ministry work, and summer retreats, is not like a separate recreational facility where the public can watch a church sponsored team perform.

{¶16} *Recreational activity for the purpose of church recruitment or to promote religious values is not primarily for public worship.* We first address Vineyard's contention that recreational areas qualify for the tax exemption under R.C. 5709.07(A)(2) because the recreational opportunities are necessary to the creation of an atmosphere where students can be effectively encouraged to participate in the public worship that takes place elsewhere on the property. This is not a novel argument.

{¶17} The BTA rejected this argument applying the analysis of the Supreme Court in *Moraine Hts. Baptist Church*, 12 Ohio St.3d 134, 465 N.E.2d 1281, and the numerous cases following *Moraine Hts.*, including the BTA's own decision, *Grace Chapel v. Levin*, BTA No. 2007-K-835, 2010 Ohio Tax LEXIS 616 (May 4, 2010).

{¶18} In *Moraine Heights*, the Supreme Court upheld the division of property operated as a church camp into exempt and nonexempt sections. The

6

section containing the church's chapel was exempted. *Moraine Hts.*, 12 Ohio St.3d. at 134, 465 N.E.2d 1281. The nonexempt section contained a dormitory, cabins, a cafeteria with kitchen and dining facilities, a shower and restroom facility, a swimming pool, a basketball court, a shuffleboard court, a shelter house, and open recreation fields. *Id.* The property was used for camping programs during the week and for retreats, picnics, and other social functions during the weekend. *Id.*

{¶19} The church, much like Vineyard in this case, argued that the primary use of the camp and its facilities was for public worship because the camp "create[d] an atmosphere conducive to the worship of God." *Id.* at 136. Despite the church's claim that the areas were "vital to the camp for the purpose of entertaining youth in an atmosphere in which worship is the primary goal," *id.* at 137, the Supreme Court ultimately concluded that the BTA's denial of the exemption was both reasonable and lawful "[i]n view of the fact that the swimming pool, basketball and shuffleboard courts, as well as the remainder of the appellant's unimproved property constituting the vast majority of the forty-nine acre church camp, are neither buildings used exclusively for public worship, nor necessary for the proper occupancy, use and enjoyment of the tax-exempt chapel." *Id.*

{¶20} The BTA followed *Moraine Hts.* in *Grace Chapel* to affirm the commissioner's denial of an exemption for facilities used for social and recreation purposes even though the board accepted that those purposes provided the church with "an alternative means by which to reach out to the individuals and draw them into its ministry." *Grace Chapel*, BTA No. 2007-K-835, 2010 Ohio Tax LEXIS 616 at *17.

{¶21} In *Grace Chapel*, the church's facilities were to include areas for recreation and athletics such as a volleyball court, a rock climbing wall, batting cages,

and a basketball court, as well as a game room, lounge, and computer lab. The BTA recognized that the facilities were capable of a variety of types of uses and that the facilities "may, at times, be used by [the church] to engage in worship." *Id.* at *24. But the board concluded that that "the design, function, and primary purpose of these facilities" would "remain recreational/athletic" and not for public worship. *Id.* at *24-25.

{¶22} In sum, a recreational facility or area that is used for purposes of church recruitment or to promote religious values is merely supportive of or incidental to a church's goal to promote worship. And an area used primarily for recreational purposes does not meet the primary-use test for exemption under R.C. 5709.07(A)(2), even when that recreational use is supportive of religious purposes. *See Moraine Hts., supra*; *Grace Chapel, supra*; *Columbus Christian Ctr. v. Zaino*, 10th Dist. Franklin No. 02AP-563, 2002-Ohio-7033, ¶ 15.

{¶23} *Evidence Supports BTA's Primary-Use Determination.* The record in this case supports the BTA's determination that the nonexempt area in the student ministries building is used primarily for recreation and not for public worship. Part of the area is designed exclusively for recreation, as the basketball posts and the fencing around the basketball courts are not removable. Moreover, the area is regularly used for recreational purposes. The fact that this recreational area is located within the same building as exempt property and that the area is at times used for small group sessions, youth retreats, and the like, does not, as Vineyard suggests, alter the application of the primary-use test. *See, e.g.*, *Faith Fellowship Ministries*, 32 Ohio St.3d at 437, 513 N.E.2d 1340 (a cafeteria, sleeping rooms for retreats, and a gymnasium were not exempt even though those areas were supportive of public worship conducted in exempt portions of the same building).

8

## Conclusion

**{¶24}** The BTA applied the correct legal analysis and, after weighing the relevant evidence, determined that the nonexempt area was primarily used for recreation and was merely supportive of public worship. In urging this court to reverse, Vineyard is essentially asking this court to impermissibly reweigh the evidence in the record. *See Moraine Hts.*, 12 Ohio St.3d at 136, 465 N.E.2d 1281. Because the BTA's decision upholding the tax commissioner's decision is both reasonable and lawful, we overrule the assignment of error, and we affirm the BTA's decision.

Judgment affirmed.

**HILDEBRANDT** and **HENDON, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.