WORLD EVANGELISTIC ENTERPRISE CORPORATION, Appellant,

v.

TRACY, TAX COMMR., Appellee.*

[Cite as World Evangelistic Ent. Corp. v. Tracy (1994), 96 Ohio App.3d 78.]

Court of Appeals of Ohio,
Clark County.

No. 3100.

Decided June 29, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1412, 641 N.E.2d 1111.

*Daniel C. Harkins,* for appellant.

*Lee I. Fisher,* Attorney General, *Richard Farrin* and *Janyce C. Katz,* Assistant Attorneys General, Taxation Section, for appellee.

GRADY, Presiding Judge.

■ World Evangelistic Enterprise Corporation ("WEEC") appeals the decision of the Ohio Board of Tax Appeals, affirming the Tax Commissioner's refusal to grant a real property tax exemption for the land on which WEEC's broadcasting facility is located.

WEEC is a nonprofit corporation that was organized in 1961 for the purpose of operating a Christian radio station to propagate the gospel in a non-denominational manner. WEEC has adopted a Statement of Faith, which provides, *inter alia,* that the Old and New Testaments were inspired by God, that Jesus Christ is the Lord and Savior, and that eternal life exists for believers.

WEEC presently operates a noncommercial radio station devoted to religious programming, supported by listener donations and contributions of churches and radio program producers. WEEC's religious programming includes a Sunday morning worship service from a church in Chicago, inspirational music, devotional prayers, youth programs with biblical and spiritual themes, Bible teaching programs, call-in programs, and activity announcements. WEEC is licensed by

the Federal Communications Commission and broadcasts the news and public affairs information required by the FCC.

In 1969, WEEC was granted a real property tax exemption for the two acres of land in German Township, Clark County, on which its broadcasting facilities are located. In 1989, WEEC purchased approximately 7.264 acres of land across the road from its current location to construct new offices and a new broadcasting studio and radio transmission tower. At present, a radio transmission tower, a transformer building, and a storage building have been constructed on the site. This new location is currently being used by WEEC to broadcast its programs.

In 1989, WEEC filed an application for a tax exemption for the newly purchased land. The Tax Commissioner found that this property was not entitled to an exemption and denied WEEC's application. WEEC appealed this denial to the Board of Tax Appeals. After a hearing, the Board of Tax Appeals held that the broadcasting facility was not used as a "house of public worship" and that WEEC was not entitled to a tax exemption on that basis. The board affirmed the Tax Commissioner.

WEEC has filed a timely notice of appeal of the decision of the Board of Tax Appeals and now presents two propositions of law in support of this appeal, which we will construe as assignments of error.

The first proposition of law states:

"A not-for-profit corporation whose stated purpose is to propagate the gospel and which accomplishes its purpose through the operation of a non-commercial radio station that is dedicated to the broadcast of Christian programming is a church."

The second proposition of law states:

"Radio broadcasting facilities which are used exclusively by a church to propagate the gospel and which are not used with a view for profit constitute a public house of worship that is exempt under the real property tax pursuant to Section 5709.07(A)(2) of the Ohio Revised Code."

Initially, we note that when reviewing decisions of the Board of Tax Appeals we are confined to our statutorily delineated duty of determining whether the board's decision is "reasonable and lawful." R.C. 5717.04. *Episcopal Parish v. Kinney* (1979), 58 Ohio St.2d 199, 201, 12 O.O.3d 197, 198, 389 N.E.2d 847, 848.

Under its first proposition of law, WEEC argues that it is a church with a congregation that consists of the listeners who rely on WEEC for spiritual guidance. However, whether WEEC is or is not a "church" in that sense does not determine the availability of the tax exemption it seeks to have. The exemption which WEEC seeks is for "houses used exclusively for public wor-

ship," as that term is used in R.C. 5709.07. That statute provides, in pertinent part:

"(A) The following property shall be exempt from taxation:

" * * *

"(2) *Houses used exclusively for public worship,* the books and furniture in them, *and the ground attached to them* that is not leased or otherwise used with a view to profit and *that is necessary for their proper occupancy, use, and enjoyment*[.]" (Emphasis supplied.)

WEEC argues that its radio broadcasting facilities, which are used exclusively to propagate a religious gospel, constitute a house "used exclusively for public worship" and are, therefore, exempt from taxation pursuant to R.C. 5709.07(A)(2). WEEC claims that, in addition to its radio broadcasts that encourage and cause public worship, its facilities are used to coordinate other religious activities, such as pastoral counseling, foreign missionary efforts, and off-site religious services.

■ "For the purposes of R.C. 5709.07, 'public worship' means the open and free celebration or observance of the rites and ordinances of a religious organization." *Faith Fellowship Ministries v. Limbach* (1987), 32 Ohio St.3d 432, 513 N.E.2d 1340, paragraph one of the syllabus. The exemption allowed pursuant to R.C. 5709.07(A)(2) is for property used primarily to facilitate such celebrations or observances. *Id.* at paragraph two of the syllabus.

The concept of a "house used exclusively for public worship," as it appears in R.C. 5709.07(A)(2), has its origin in Section 2, Article XII of the Constitution of Ohio, which concerns tax rate limitations and exemptions. That section provides, *inter alia*:

"Without limiting the general power, *subject to the provisions of Article I of this constitution,* to determine the subjects and methods of taxation or exemptions therefrom, *general laws may be passed to exempt* burying grounds, public school houses, *houses used exclusively for public worship,* institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose, but all such laws shall be subject to alteration or repeal; and the value of all property so exempted shall, from time to time, be ascertained and published as may be directed by law." (Emphasis supplied.)

Article I of the Ohio Constitution sets out the Bill of Rights. Section 7 deals with freedom of religion and provides *inter alia*:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and *no preference shall be given, by law, to any*

*religious society;* nor shall any interference with the rights ·of conscience be permitted." (Emphasis supplied.)

All parts of the Ohio Constitution enjoy an equal status. The provisions of Section 2, Article XII, however, are by its terms expressly "subject to the provisions of Article I." Therefore, when any conflict arises between them, the provisions concerning tax rates and exemptions in Section 2, Article XII, must be brought into accord with those of the Bill of Rights in Article I.

The term "house used exclusively for public worship," as that term is used in R.C. 5709.07(A)(2), might be limited to structures in which the worshipful rites and ordinances of a religious society are celebrated or observed by members of the society in congregation there for that purpose. The radio broadcast and reception of religious programs may certainly have a worshipful purpose, but the persons who engage in that worship are not in congregation assembled. Instead, they are dispersed in a great many locations at which the broadcast signal is received.

A "society" is a group of persons broadly distinguished from other groups by mutual interests, participation in characteristic relationships, shared institutions, and a common culture. See American Heritage Dictionary of the English Language (3 Ed.1992) 1711. In former times, and particularly in a religious context, a "society" frequently involved a community of persons living and worshipping together.

Today, people may share mutual interests and relationships through institutions that rarely, and sometimes never, involve assembly of those who share in that membership. Communication of the common culture is accomplished by electronic means, and is not limited by the reach of the human voice. Some of these involve reciprocal or bilateral communications. Some involve unilateral messages. Nevertheless, such persons are in a "society," notwithstanding the fact that they are not assembled in one place but dispersed in a great many locations.

Since the early decades of this century, religious programs have been a major part of radio broadcasting in this country. In more recent years that form of broadcast has expanded into television, and it is now employed by not only ·marginal religious groups but also by mainstream churches and religious organizations to propagate a religious message to their adherents.

Radio broadcasts of religious programs do not constitute an institutionalized church, which is the traditional form of religious society. However, for purposes of the tax exemption concerned, the test does not concern the form of a religious society but the fact of its existence.

The programs broadcast by WEEC are primarily religious, and they are received for a worshipful purpose by those who subscribe and listen to them. The broadcast and reception constitute a form of public worship and the persons who participate in those exercises constitute a religious society. The property for which WEEC seeks an exemption is used primarily to facilitate the celebration and observances of that particular religious society.

We conclude that the term "house," as used in connection with the concept of public worship in Section 2, Article XII, must be construed broadly to satisfy the requirements of Section 7, Article I. If it is limited to structures at which the members of a religious society gather in congregation to worship, that usage necessarily gives those societies a "preference," in the form of a tax exemption, over other religious societies which do not assemble in that fashion, or do not assemble at all. Section 7, Article I prohibits such preferences and any law which creates them. Therefore, a similar, broad construction must be given to the same terms as they appear in R.C. 5709.07.

A "house used exclusively for public worship," as used in R.C. 5709.07, must accommodate a structure or facility that is used exclusively or primarily to propagate a religious message to persons who receive that message for a worshipful purpose. Those who engage in that activity constitute a form of religious society, whether they are gathered where the religious message originates or are dispersed elsewhere.

The record demonstrates that the radio broadcast facilities on the property for which WEEC seeks an exemption are used exclusively or primarily for public worship and that they are not susceptible to division between exempt and nonexempt portions. Each is a necessary and integral part of the whole. Therefore, those facilities qualify for an exemption under the terms of R.C. 5709.07.

The Board of Tax Appeals erred in denying the exemption. The board's order is vacated and the matter is remanded to the Board of Tax Appeals with a mandate to enter an order granting the form of exemption required.

*Judgment accordingly.*

FAIN and FREDERICK N. YOUNG, JJ., concur.