O’Connor, C.J.,
dissenting.
{¶ 41} In this appeal, appellant, Christian Voice of Central Ohio, asserts that it established that its real property, which is located in Gahanna and serves primarily as a radio broadcast station, satisfies the “exclusive use” requirement to qualify for tax-exempt status for “[hjouses used exclusively for public worship” under R.C. 5709.07(A)(2).
{¶ 42} The majority frames the issue before us as whether appellant’s broadcast of “adult contemporary Christian” music mystically transforms its radio station into a tax-exempt house of worship. If that framing were proper, we would face a church-state issue that poses complex constitutional conundrums. See Young Life Campaign v. Patino, 122 Cal.App.3d 559, 565, 176 Cal.Rptr. 23 (1981). But the question before us is far more simple and mundane: Is appellant entitled to a tax exemption on real property that contains a radio broadcast station that produces millions of dollars in revenue? That question should be answered according to this state’s law of taxation, which is meant to apply equally to all Ohioans.
{¶ 43} The principle underlying Ohio tax law is that all Ohioans must equally bear the burdens of taxation and, therefore, that all real property is subject to taxation except in the limited circumstances in which the General Assembly has granted tax exemptions. R.C. 5709.01; Seven Hills Schools v. Kinney, 28 Ohio St.3d 186, 503 N.E.2d 163 (1986); Kroger Co. v. Schneider, 9 Ohio St.2d 80, 83, 223 N.E.2d 606 (1967), citing Exchange Bank of Columbus v. Hines, 3 Ohio St. 1, 15 (1853). The property owner bears the burden of establishing entitlement to an exemption, which is conferred by statute, and exemption provisions are construed strictly to ensure fairness to all. Natl. Tube Co. v. Glander, 157 Ohio St. 407, 105 N.E.2d 648 (1952), paragraph two of the syllabus; Cincinnati College v. State, 19 Ohio 110, 115 (1850). In all doubtful cases, exemptions must be denied. A. Schulman, Inc. v. Levin, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7. These basic rules are designed to ensure that all Ohioans are burdened equally by taxation. Lutheran Book Shop v. Bowers, 164 Ohio St. 359, 362, 131 N.E.2d 219 (1955); Watterson v. Halliday, 77 Ohio St. 150, 171, 82 N.E. 962 (1907).
{¶ 44} Appellant seeks the statutory exemption provided to “[h]ouses used exclusively for public worship * * * and the ground attached to them that is not * * * used with a view to profit.” R.C. 5709.07(A)(2).
*228 {¶ 45} Based on a careful review of the record in this case, measured against our legal precedent, the Board of Tax Appeals found that the property in question is not tax-exempt as a house used exclusively for public worship. Instead, it concluded, quite unremarkably, that the property was used to operate a radio station and thus was not exempt under R.C. 5709.07(A)(2).
{¶ 46} Our task is a limited one: We are to review the BTA’s decision and uphold it if it is reasonable and lawful. R.C. 5717.04; Seven Hills Schools, 28 Ohio St.3d at 186-187, 503 N.E.2d 163. In doing so, the law requires that “we indulge no presumption favorable to [tax] exemptions,” Inc. Trustees of Gospel Worker Soc. v. Evatt, 140 Ohio St. 185, 188, 42 N.E.2d 900 (1942), and demands that even if we are sympathetic to “appellant’s desire to acquire tax exempt status for a radio station which provides inspiration to so many,” we may not “create new categories for tax exemption; that is the job more properly left to the legislature,” Jimmy Swaggart Evangelistic Assn. v. Kinney, 6th Dist. Wood No. WD-82-64, 1983 Ohio App. LEXIS 5732, 6 (Mar. 18, 1983).
{¶ 47} Nevertheless, the majority here announces a new and overly broad interpretation of the exemption provision in R.C. 5709.07(A)(2), with an analysis that hints at dispensation for perceived religious freedoms, majority opinion at ¶ 35-36, but which is ultimately based on inapposite case law flown in on a wing and a prayer. I dissent from that blatant activism, which reaches a result favorable to this appellant, to the burden of every other Ohio taxpayer.
{¶ 48} I would hold that the tax commissioner properly denied tax-exempt status under R.C. 5709.07(A)(2). I would also deny on the merits appellant’s argument based on collateral estoppel and reject as waived appellant’s partial-exemption claim.
Analysis

Appellant

{¶ 49} Let us first consider appellant.
{¶ 50} Appellant operates on a multimillion-dollar annual budget.
{¶ 51} The property for which it seeks a tax exemption includes a building that encompasses nearly 17,000 square feet and contains “production studios used for the origination of certain religious programming, offices, assembly rooms and a chapel.” The religious programming offered by appellant is almost entirely “adult contemporary Christian” music that appellant obtains from music-industry sources and monitors carefully for ratings. Appellant does not broadcast prayer or church services. Other than music (and advertisements), listeners are offered only a 60-second devotional “spot,” which is run “cyclically throughout the day,” and attempts by appellant’s disc jockeys (“DJs”) to “shar[e] their lives spiritually” on the air.
*229 {¶ 52} The chapel occupies a minute portion of the facility, a 25-by-15-foot room, which is approximately 375 square feet — two percent of the total square footage of the structure. Although appellant’s listeners are invited to use the chapel, there are no regular worship services in it, and its use by those seeking religious guidance is rare. Indeed, appellant has conceded that the use of the chapel is de minimis. And although the majority makes a point of noting the work of “Pastor John,” a minister and DJ employed by appellant, there is absolutely nothing in the record establishing that he uses the chapel to lead religious services for the public.
{¶ 53} Appellant emphasizes that a meeting room in'the basement is open to churches and other organizations for use, free of charge. For example, a local church uses the room for a weekly youth-group meeting and for Sunday evening services. But the record is devoid of any . showing that other groups use the building for religious purposes. In fact, many of those who visit, including members of the Boy Scouts of America and children who are home-schooled, tour the building for educational purposes rather than for religious ones.
{¶ 54} To the extent that appellant has a flock, that flock is its on-air audience, which includes those who tune in from their homes, motor vehicles, or workplaces. Though the flock numbers about a quarter of a million people, the great majority of appellant’s income — about two-thirds — is derived from advertising revenue and the rental of appellant’s broadcasting towers.[2] It is not a bad business, evidently; appellant secures approximately two million dollars in annual revenue from the advertisements that it broadcasts between the faith-based songs on its playlist.
{¶ 55} Appellant nevertheless asserts that its use of the property is for the purpose of “furthering the gospel of Jesus Christ through Contemporary Christian Music and Preaching and Teaching radio programs.” The chief sales officer of the broadcasting corporation contends that the sale of advertising is “vital to the furtherance of the ministry of the radio station.” And appellant’s chief executive officer explains, “It takes money to do what we do to get the Gospel out there.”
{¶ 56} As far as economic principles go, those statements may be truthful. But they neither equate with the law of taxation, nor are they unassailable religious principles. Quite the contrary. Even assuming that appellant’s programming is “bible verses put to music,” majority opinion at ¶ 10, appellant is not unique in that regard. As the majority admits, music is integral to many religious *230 traditions. Id. at ¶ 28, citing Equal Emp. Opportunity Comm. v. Roman Catholic Diocese of Raleigh, 213 F.3d 795, 802 (4th Cir.2000).
{¶ 57} References to music, including singing and the use of musical instruments, appear throughout the Bible. See, e.g., Isaiah 12:5; Psalms 9:2, 11; 1 Chronicles 13:8. And references to the Bible and other religious texts are often the bases of great works by musical artists, even those considered outside the contemporary Christian music genre. Consider, for example, Pete Seeger’s Turn! Turn! Turn! (To Everything There Is A Season), which was made famous by The Byrds in the 1960s but is, essentially, a restatement of the Book of Ecclesiastes. Cohn, The Byrds’ Turn! Turn! Turn! TURNS 50 (Dec. 4, 2015), http://www.biography.com/news/the-byrds-turn-turn-turn-facts-anniversary (accessed Mar. 4, 2016). Similarly, other great musicians have found comfort, solace, and faith in music they created based on their own interpretations of religious texts,[3] as Andrew Lloyd Webber did with Joseph and the Amazing Technicolor Dreamcoat and Jesus Christ Superstar. See Coulson, They’re Playing Our Song! The Promise and the Perils of Music Copyright Litigation, 13 J.Marshall Rev.Intell.Prop.L. 555, 563 (2014); http://www.jesuschristsuperstar. com/about/ (accessed Mar. 4, 2016). And who could argue that Handel’s Messiah is not one of the world’s greatest pieces of music inspired by religious teachings?
{¶ 58} But as both Christians and taxpayers will recognize and understand, the mere fact that those songs are transmitted over radio airwaves does not transmogrify the broadcaster into a tax-exempt house of worship under the Revised Code any more than a television or cable station comes closer to tax-exemption eligibility every time it airs a religiously inspired song or movie. And the mere fact that one might receive the broadcast in his home or even spend a portion of his week humming, whistling, or singing some of the great hymns or “bible verses set to music” does not transform one’s abode or vehicle into a tax-exempt house of worship.

The Majority’s Opinion

The majority uses incorrect standards of review and inapposite law
{¶ 59} To carve out an improper tax exemption here, the majority chooses to ignore legislation and the law on church taxation cited by the parties and instead relies on inapposite law, Maumee Valley Broadcasting Assn. v. Porterfield, 29 Ohio St.2d 95, 279 N.E.2d 863 (1972).
*231 {¶ 60} Maumee Valley presented a discrete question: whether a nonprofit religious corporation was a tax-exempt “church” within the meaning of Ohio’s sales-tax statute, R.C. 5739.02(B)(12). Contrary to the majority’s suggestion that Maumee Valley provides guidance here, that summary decision offers little to assist us in determining whether appellant is a “[h]ous[e] used exclusively for public worship” under R.C. 5709.07(A)(2). And to the extent that Maumee Valley has any import here, it is of no help to appellant. To the contrary, Maumee Valley supports the tax commissioner’s determination.
{¶ 61} At the outset, it is important to recognize that Maumee Valley clearly mandates a different standard of review than that used by the majority. Mau-mee Valley holds that the determination whether an organization is a church is a factual determination, not a legal one. Id. at 98 (describing the “factual determination” of the Board of Tax Appeals in deciding whether the corporation was a church for purposes of the sales-tax statute). The majority ignores that part of the holding, which it must do in order to employ de novo review rather than the deferential review that should apply- — and that would require our affirmance of the tax commissioner’s decision in this case. See Seven Hills Schools, 28 Ohio St.3d at 186-187, 503 N.E.2d 163. The court’s decision today, however, ignores but does not change our clear precedent that “ ‘[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,’ ” we will affirm them. Satullo v. Wilkins, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting Am. Natl. Can Co. v. Tracy, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995). When engaging in appellate review of tax decisions, every member of the court should remember the commandment that we do not intrude on determinations that are sound and supported by the record.
It is not our province to be a “super board” and thereby render a different decision because we have interpreted the facts differently than has the board. While we have the ultimate authority, we should always remember that we are not final because we are infallible- — we are only infallible because we are final.
(Emphasis sic.) Faith Fellowship Ministries, Inc. v. Limbach, 32 Ohio St.3d 432, 439-440, 513 N.E.2d 1340 (1987) (Douglas, J., concurring in part and dissenting in part).
{¶ 62} Even assuming that the majority could find some way around the standard of review, the facts and law make Maumee Valley inapplicable here.
{¶ 63} The majority’s analysis of Maumee Valley omits two critical facts: Maumee Valley involved a nonprofit religious organization that conducted church *232 services on its premises for members of the public, and the organization’s only source of revenue was “donations, gifts, and contributions.” 29 Ohio St.2d at 95-97, 279 N.E.2d 863. In fact, about 80 percent of the organization’s gross receipts came from approximately 500 people called “faith partners,” who contributed financial support on a monthly basis. Id. at 96-97. With the millions in advertising revenue that it secures, appellant is, of course, quite different from the organization in Maumee Valley and quite different from the many traditional churches that receive modest revenue from advertising in their weekly bulletins or on banners at church functions. See majority opinion at ¶ 32.
{¶ 64} Even if the cases were not distinguishable on the facts, they would remain distinguishable on the law because the organization in Maumee Valley and the radio station here rely on different exemptions from different taxes.
{¶ 65} The syllabus in Maumee VaUey is limited expressly to R.C. 5739.02(B)(12) — a statute not at issue here. For this reason, the BTA found appellant’s reliance on Maumee Valley to be misplaced because the standards applicable there are not applicable to the exemption for “[hjouses used exclusively for public worship.”
{¶ 66} Moreover, although Maumee Valley states that a nonprofit religious corporation may not be denied tax-exempt status “for the reason that it operates a radio facility in conjunction with and in furtherance of its religious and charitable activities,” 29 Ohio St.2d 95, 279 N.E.2d 863, at syllabus, it does not say that the taxing authorities — or this court — must grant an exemption to a radio facility. Its holding is of no import here.
{¶ 67} Properly understood, Maumee Valley stands for the proposition that a nondenominational church, which was relatively uncommon in 1972,[4] is eligible for exemption on the same grounds as a more traditional house of worship.[5] The majority in Maumee Valley clarified that even if a nonprofit religious corporation “is not without some unique features” and “cannot, in a traditional sense, claim a certain congregation,” it can be considered a church under R.C. 5739.02(B)(12). Id. at 98.
*233 {¶ 68} Indeed, the opinion pointedly states, albeit without proper attribution to the great 19th-century agnostic orator Robert Green Ingersoll, that it was referring to nondenominational churches: “In other words, a church of the type ‘that finds with joy the grain of gold in every creed, and floods with light and love the germs of good in every soul’ cannot reasonably be denied exempt status for that reason alone.” Id.
{¶ 69} In any event, the fact that appellant is nondenominational is not an issue in this case and plays no role in the legal analysis of its tax liability. Thus, ■Maumee Valley is neither applicable nor compellingly illustrative on either fact or law. And to the extent that Maumee Valley has any proper application here, the majority ignores it.
{¶ 70} But those are not the only analytical sins committed by the majority.
The majority incorrectly concludes that appellant’s property is used exclusively for public worship
{¶ 71} The majority’s effort to bless appellant with a tax exemption purportedly relies on this court’s lead opinion in Faith Fellowship Ministries, 32 Ohio St.3d 432, 513 N.E.2d 1340. It bears mention, however, that in that case, three justices would have gone so far as to exempt from taxation, along with an applicant’s sanctuary, its cafeteria, gymnasium, swimming pool, “playfield,” and nature trails. Id. at 439 (Locher, J., joined by Wright and Brown, JJ., concurring in part and dissenting in part). But common sense prevailed, and four justices rejected that overly generous view of the exemption, id. at 437 (lead opinion); id. at 439 (Douglas, J., concurring in part and dissenting in part), holding that only the portions of property that are used in a principal, primary, and essential way to facilitate public worship are exempt from real estate taxes, id. at paragraph two of the syllabus. See also Christ Church Pentecostal v. Tennessee State Bd. of Equalization, 428 S.W.3d 800, 808, 814 (Tenn.App.2013) (affirming the denial of a property-tax exemption for a bookstore café operated by a church, in part for outreach efforts).
{¶ 72} Properly understood, the holding in Faith Fellowship stands for the proposition that public worship means the “open and free celebration or observance of the rites and ordinances of a religious organization.” Id. at paragraph one of the syllabus. As Chief Justice Moyer explained in Faith Fellowship, public worship must be public:
The everyday expression of one’s relationship with a supernatural power may be considered by that individual as worship. This court certainly does not intend to discourage such activity. However, the Constitution, which incorporates the exemption, and the statute, by which it is estab *234 lished, contémplate that the worship be a celebration of a religious rite in an open and free place and not the everyday activities of an individual which express devotion to his or her God.
(Emphasis added.) Id. at 436 (lead opinion).
{¶ 73} The majority’s suggestion here that the General Assembly amended the statute in the wake of Faith Fellowship in order to make the statute applicable to radio broadcast listeners is not an accurate understanding of the decision or the amendment. It simply demonstrates the majority’s attempt to impose its logic on a statutory scheme and to create an unlimited tax exemption beyond the scope of the express statutory language. See Clayton v. Ohio Bd. of Nursing, 147 Ohio St.3d 114, 2016-Ohio-643, 62 N.E.3d 132, ¶ 46 (Kennedy, J., dissenting).
{¶ 74} The amendment made clear that a “church” can be any number of believers who formed primarily or exclusively for a religious purpose and who did not form for the private profit of any person. R.C. 5709.07(D)(1). Even assuming that the majority is correct in that the legislature intended to expand the definition of a “[h]ous[e] used exclusively for public worship” to mean more than a physical structure, see, e.g., World Evangelistic Ent. Corp. v. Tracy, 96 Ohio App.3d 78, 83, 644 N.E.2d 678 (2d Dist.1994),[6] nothing in any of the General Assembly’s amendments to R.C. 5709.07 shows that the legislature intended to alter the fundamental premise of Faith Fellowship, i.e., the necessity of public worship. And even if we assume that listening to music is worship, nothing in the record before us establishes that appellant’s property is used exclusively for public worship. “For the purposes of [R.C. 5709.07(A)(2)], ‘public worship’ means the open and free celebration or observance of the rites and ordinances of a religious organization; it does not include everyday activities that express devotion to God.” (Emphasis added.) 86 Ohio Jurisprudence 3d, Taxation, Section 539, at 650 (2009).
*235 {¶ 75} And, even if we assume appellant had adduced sufficient evidence that it is a house of public worship, it is still unable to establish that the exemption is proper.
{¶ 76} Appellant is a radio station. The fact that it broadcasts religious songs or does charitable deeds does not change that fact. Even if it bears the indicia of incidental aspects of a ministry, it is not entitled to an exemption, because it is not used exclusively for public worship. See, e.g., Watterson, 77 Ohio St. at 173, 82 N.E. 962.
{¶ 77} The statutory term “exclusive” means just that — exclusive. Here, even accepting the argument that appellant uses its programming to evangelize, it admittedly also uses its radio stations to generate income. The majority makes much of the fact that appellant’s purported use of that income is not for profit but for the benefit of the station’s charitable and religious works. But in doing so, the majority ignores the well-established rule in Ohio that “it is the use of the property and not the use of the proceeds derived therefrom” that determines whether a tax exemption is conferred. Columbus Youth League v. Cty. Bd. of Revision, 172 Ohio St. 156, 158, 174 N.E.2d 110 (1961). “Any right of exemption is lost if the property is used to produce income, regardless of the fact that the income is exclusively used for a purpose that is of such a nature that if the property itself, rather than its income, were so used the property would be exempt.” 86 Ohio Jurisprudence 3d, Taxation, Section 539, at 649-650 (2009), citing Inc. Trustees of Gospel Worker Soc., 140 Ohio St. 185, 42 N.E.2d 900. “[T]he test is the present use of the property rather than the ultimate use of [the] proceeds,” id. at paragraph two of the syllabus, even when the owner of the property is a not-for-profit corporation organized for charitable purposes:
“Where a substantial portion of the gross income of a corporation is received for work done in competition with commercial concerns in the same line, the property of such corporation may not be exempted from taxation under Section 5353, General Code [Section 5709.12, Revised Code], even though such corporation be one formed not for profit and owned by a religious institution, for whose use, benefit and behoof the property of the corporation is held.”
(Brackets sic.) Lutheran Book Shop, 164 Ohio St. at 361-362, 131 N.E.2d 219, quoting Zindorf v. Otterbein Press, 138 Ohio St. 287, 34 N.E.2d 748 (1941), paragraph two of the syllabus.
{¶ 78} “ ‘When money is made by the use of [a] building, that is profit, no matter to what purpose that money is applied.’ ” (Brackets sic.) Three Angels Broadcasting Network, Inc. v. Dept. of Revenue, 381 Ill.App.3d 679, 697, 319 *236 Ill.Dec. 283, 885 N.E.2d 554 (2008), quoting People ex rel. Baldwin v. Jessamine Withers Home, 312 Ill. 136, 141, 143 N.E. 414 (1924). “Thus, property used by a charitable organization to raise money for that group’s charitable activities is not exempt since the property’s direct and primary use is fund-raising and not charity itself.” Nome v. Catholic Bishop of N. Alaska, 707 P.2d 870, 879 (Alaska 1985).
{¶ 79} Having concluded that appellant fails to establish that the BTA’s decision is not entitled to our deference or even to show that the property in question is a house of worship used exclusively for public worship, I would affirm the BTA’s decision. I therefore address two other points raised by appellant in its appeal to this court but not addressed by the majority.
The tax commissioner was not collaterally estopped from denying the exemption
{¶ 80} Appellant asserts that the tax commissioner was collaterally estopped from denying it the exemption because the tax commissioner previously conferred one on appellant in 1991.
{¶ 81} This court has acknowledged “a narrow range of applicability for the doctrine of collateral estoppel in tax proceedings.” Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 17. The doctrine “ ‘precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action.’ ” Progressive Plastics, Inc. v. Testa, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 17, quoting Whitehead v. Gen. Tel. Co., 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969), overruled on other grounds, Grava v. Parkman Twp., 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Accord Am. Soc. for Metals v. Limbach, 59 Ohio St.3d 38, 39, 569 N.E.2d 1065 (1991) (identifying as “basic elements” of collateral estoppel in a tax proceeding “(1) an administrative proceeding of a judicial nature, (2) an identity of the parties, and (3) an identity of the issues”). Appellant’s assertion of collateral estoppel fails at the most basic level: there was no previous administrative proceeding of a judicial nature, and the issue here was not actually and necessarily litigated previously.
{¶ 82} Appellant relies on a 1991 final determination of the tax commissioner granting appellant the exemption at a former address, but that proceeding before the tax commissioner was the initial process by which the administrative determination of taxable status occurs. Thus, in no sense is the final determination in 1991 a “judgment” rendered after issues were litigated between contending parties.
{¶ 83} Moreover, the 1991 decision determined that the exemption was justified, so there was no need to litigate. Nor does the record establish that any litigation ensued.
*237 {¶ 84} The same is true of the more recent determination by the tax commissioner regarding the taxable status of part of the same property that appellant previously owned. There can be no requisite “identity of the issues” because the current exemption claim involves a different parcel in a different tax year. See Hubbard Press v. Tracy, 67 Ohio St.3d 564, 565, 621 N.E.2d 396 (1993) (collateral estoppel did not apply despite continuous exemption of printing house associated with Presbyterian Church from 1950 until its return to the taxable list in 1983 because 1983 was a different year, hence a different issue). Thus, appellant’s collateral-estoppel argument fails.
Appellant is barred from arguing for a “split listing” because it did not raise that claim in its notice of appeal to the BTA
{¶ 85} Former R.C. 5717.02 required that a notice of appeal to the BTA from a determination of the tax commissioner have a copy of the determination attached and “specify the errors therein complained of.” 2011 Sub.H.B. No. 225.[7] It is well settled that “the BTA lacks jurisdiction to grant relief from a final determination based on * * * alleged errors that were not sufficiently specified in the notice of appeal.” Brown v. Levin, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 17; see also Global Knowledge Training, L.L.C. v. Levin, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d 463, ¶ 15 (specification requirement of R.C. 5717.02 constitutes a “jurisdictional prerequisite] to the exercise of authority by the BTA or this court on appeal”).
{¶ 86} The tax commissioner’s determination specifically finds that “[t]here is no evidence that people assemble to worship together on the subject property used exclusively as a radio station.” The record suggests that that determination may not be accurate, and in its brief to this court, appellant asserts that the BTA erred in failing to consider whether the property should be split into exempt and taxable parts.
{¶ 87} But even if the claim has merit, it is jurisdictionally barred because it was not raised at the BTA. Nothing in appellant’s notice of appeal to the BTA asserted that the commissioner erred by not considering actual on-site worship services at the broadcasting facility or otherwise suggested that the nature of this case might justify split-listing portions of the property as exempt.
{¶ 88} A taxpayer is required to challenge a specific finding of the tax commissioner in order to preserve the issue before the BTA. Ellwood Engineered Castings Co. v. Zaino, 98 Ohio St.3d 424, 2003-Ohio-1812, 786 N.E.2d 458, *238 ¶ 23. Appellant did not do so, and its failure bars it from raising the issue before this court. See Osborne Bros. Welding Supply, Inc. v. Limbach, 40 Ohio St.3d 175, 178, 532 N.E.2d 739 (1988).
Conclusion
{¶ 89} I would hold that the tax commissioner properly denied tax-exempt status under R.C. 5709.07(A)(2). I would also deny on the merits appellant’s argument based on collateral estoppel, and I would reject as waived appellant’s partial-exemption claim.
Lanzinger, J., concurs in the foregoing opinion.

. Listeners apparently contribute about one-third of appellant’s income. Appellant also allows a local church to use the property twice weekly for services. Although appellant does not charge that church for rent, the church makes weekly contributions to appellant.

. The majority relies, in part, on Justice Jackson’s concurring opinion in McCollum, which forbade the states from using tax-supported public-school systems “in aid of religious instruction,” Illinois ex rel. McCollum v. School Dist. No. 71 Bd. of Edn., 333 U.S. 203, 204-205, 68 S.Ct. 461, 92 L.Ed. 649 (1948). Properly understood, Justice Jackson’s opinion recognized that many subjects taught in schools, not just music, could carry “the inspirational appeal of religion.” Id. at 235-236 (Jackson, J., concurring).

. The percentage of Protestants claiming “no denomination or non-denominational” rose from roughly four percent in the 1970s to 15 percent in 2006. Thumma, A Report on the 2010 National Profile of U.S. Nondenominational and Independent Churches, http://ww.hartfordinstitute.org/ cong/nondenominational-churches-national-profile-2010.html (accessed Mar. 10, 2016), citing National Opinion Research Center, The General Social Survey, http://gss.norc.org/, and Bader et al., The Ties that Bind: Network Overlap among Independent Congregations, 30 Social Science Computer Rev. 259 (2012).

. At that time, there appears to have been some debate in the courts over whether nondenominational churches were constitutionally exempt from taxation. See, e.g., Young Life Campaign, 122 Cal.App.3d at 571-572, 176 Cal.Rptr. 23, citing Vic Cobum Evangelistic Assn. v. Emp. Div., 35 Or.App. 655, 582 P.2d 51 (1978), and Chapman v. Commr. of Internal Revenue, 48 T.C. 358 (1967).

. As the Second District Court of Appeals has explained:
A “house used exclusively for public worship,” as used in R.C. 5709.07, must accommodate a structure or facility that is used exclusively or primarily to propagate a religious message to persons who receive that message for a worshipful purpose. Those who engage in that activity constitute a form of religious society, whether they are gathered where the religious message originates or are dispersed elsewhere.
Thus, there is some nonbinding precedent for the notion that a broadcasting corporation can be a “[h]ous[e] used exclusively for public worship” for purposes of R.C. 5709.07(A)(12). Notably, however, the World Evangelistic Enterprise Corporation was fully supported by listener donations and the contributions of churches and radio-program producers, rather than by advertising revenue. World Evangelistic Ent at 79-80.

. In 2013, the operative language of R.C. 5717.02 was changed; the statute now requires a “short and plain statement of the claimed errors in the determination,” while granting an option to amend the notice later in the proceedings. R.C. 5717.02(C). Because the notice of appeal to the BTA in this case was filed before the enactment of the 2013 legislation, we apply the earlier version of the statute.